# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TERESE THOMAS, individually and on behalf of all others similarly situated, | CASE NO. 1:22-cv-22149 |
| Plaintiff, | **Jury Trial Demanded** |
| | **CLASS ACTION COMPLAINT** |
| v. | |
| IT'S A NEW 10, LLC d/b/a IT'S A 10 HAIRCARE, | |
| Defendant. | |

## I.  CLASS ACTION COMPLAINT

Plaintiff Terese Thomas brings this Class Action Complaint against Defendant It's A New 10, LLC d/b/a It's A 10 Haircare. ("It's A 10" or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## II.  NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices related to the marketing and sale of Defendant's It's A 10 haircare Potion 10 miracle hair repair product line ("It's A 10" or "Hair Repair Products")[1] which misleadingly promise consumers that they are capable of repairing hair.

2.      As indicated in its "Brand Story," Defendant touts that It's A 10 has "revolutionized the approach to hair care by delivering results that people can see and experience – Instantly."[2] On the front and center of each Hair Repair Product, Defendant uniformly represents to consumers in large font that the products provide "miracle instant repair" leading reasonable consumers to believe that the products repair hair instantly when, in fact, the products do not repair hair at all – instantly or otherwise.  With statements across its entire marketing platform, Defendant uniformly markets its Products to lead reasonable consumers to believe that the Hair Repair Products

---

[1] The action concerns all It's A 10 haircare products in the Potion 10 "Miracle Repair" collection, which are labeled to repair hair, including but not limited to: It's A 10 Potion 10 Miracle Instant Repair Leave-In Conditioner; It's A 10 Potion 10 Miracle Instant Repair Daily Conditioner; It's A 10 Potion 10 Miracle Repair Daily Shampoo; It's A 10 Potion 10 Miracle Repair Hair Mask Deep Conditioner; and It's A 10 Potion 10 Miracle Instant Repair Leave-In Conditioner (collectively, the "Products").  *See, e.g.*, *Potion 10 Collection*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10-collection (last visited Feb. 9, 2022).

[2] *A Story Behind Every Label*, IT'S A 10, https://itsa10haircare.com/pages/brand-story (last visited Apr. 5, 2022).

1

"actually strengthen[] and correct hair with each use," [3] and that it "rebuild[s] hair from the inside out," so that "the core of the hair shaft is strengthened and restored, creating a refined outer cuticle, smoother ends, and all the other classic characteristics of strong healthy hair. "[4]

3.     On each of the Hair Repair Products' labels, "miracle instant repair" is prominently displayed in the title of the Product, with white font on a dark blue background where it cannot be missed by consumers. An example is shown below.[5]



---

[3]   *It's A 10 Potion 10 Miracle Repair Daily Shampoo*, IT'S A 10, https://itsa10haircare.com/products/potion-10-miracle-repair-shampoo?_pos=2&_sid=66b7a61da&_ss=r (last visited Apr. 5, 2022).

[4]   *It's A 10 Potion 10 Miracle Repair Daily Conditioner*, IT'S A 10, https://itsa10haircare.com/products/potion-10-miracle-repair-conditioner?_pos=1&_sid=66b7a61da&_ss=r (last visited Apr. 5, 2022).

[5] *It's a 10 Potion 10 Miracle Repair Daily Shampoo*, *supra* note 3.

4.      Defendant's uniform advertising and marketing of the Hair Repair Products is designed with the goal of enticing consumers to purchase the Hair Repair Products over other competing haircare products based on Defendant's bold promise to repair broken and/or damaged hair.

5.      Hair health is a major concern for American consumers, and for women in particular. In a recent nationwide survey conducted by InStyle magazine, 60% of women surveyed listed hair breakage as a concern.[6] This is exactly the population that Defendant seeks to target with its promises of miracle hair repair.

6.      Unfortunately for the millions of consumers who want to repair their damaged hair, the Hair Repair Products cannot deliver the promised result.

7.      The Hair Repair Products do not actually repair damaged hair, because there are no ingredients in the Hair Repair Products capable of doing so. Hair is primarily composed of a family of proteins called keratin, which is dead organic matter that cannot be repaired once damaged through the use of in-home treatments. Thus, because hair is a collection of the remnants of dead cells, once damaged, it is beyond repair and certainly beyond the capabilities of in-home treatments.

8.      Reasonable consumers, including Plaintiff, believe that a product promising to "repair" damaged hair will do just that. In other words, reasonable consumers believe the Hair Repair Products can cure, fix, mend, or otherwise heal their damaged hair. In reality, the Hair Repair Products, at most, can only create the temporary illusion that the user's hair has been repaired because *nothing in the Hair Repair Products can actually mend damaged keratin*

---

[6] Laura Brown, *We Asked Women Across the Country All About Their Hair*, INSTYLE (Feb. 3, 2022, 7:50 AM), https://www.instyle.com/beauty/ava-duvernay-cover-march-2022.

*proteins*. The Products can and often do add material to the hair fiber, often as a coating on the outside, that temporarily alters the look and feel of the hair, but require frequent re-treatment to obtain the same illusion of repaired hair.

9.    Consumers, including Plaintiff, willingly pay a premium for these Products based on Defendant's pervasive and uniform marketing which expressly—and falsely—promises to "repair" damaged hair. Even worse, the Products require frequent use and essentially trap the consumer into an endless cycle of repeated purchase of the same deceptively marketed product. But for these misrepresentations, Plaintiff and Class Members would not have purchased the Hair Repair Products on the same terms or for the same price.

10.    Defendant formulates, designs, manufactures, markets, advertises, distributes, and sells its Products to consumers throughout the United States. These Products are sold through various authorized brick-and-mortar and online retailers such as Ulta Beauty, Walmart, and Amazon, among others

11.    The global hair care market is a multi-billion-dollar industry and is projected to reach $134 billion in 2028.[7]  Hair repair products play a prominent role in this industry.  Defendant is well aware of this financial opportunity and have made false promises to consumers that the Hair Repair Products will repair hair at the expense of consumers in an effort to garner market share and profits at the expense of consumers. Defendant's misrepresentations are made to deceive reasonable consumers—desperate to repair their hair—into believing the Hair Repair Products will do just that.

---

[7] *Hair and Scalp Care Market Size Worth $134.3 Billion by 2028*, GRAND VIEW RESEARCH, www.grandviewresearch.com/press-release/global-hair-care-market (last visited Apr. 5, 2022).

12.     However, the Hair Repair Products are incapable of delivering this promise, and consumers purchasing the products do not receive the benefit of their bargain. If Defendant had disclosed to Plaintiff and the putative Class Members that the Hair Repair Products were incapable of repairing damaged hair, Plaintiff and the putative Class Members would not have purchased the Hair Repair Products, or they would have paid less for them.

13.     Defendant's promises, like its customers' hair, remain broken. Plaintiff Thomas therefore seeks injunctive and other equitable relief, damages, restitution, and costs of suit and reasonable attorneys' fees on behalf of herself and the proposed Class.

### III.  JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff Thomas and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff Thomas's state law claim(s) pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, has substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States and the State of Florida

16.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff Thomas's claims occurred in this District,

Defendant transacts business in this District, and Defendant has intentionally availed itself of the law and markets within this District.

### IV. PARTIES

17.    Plaintiff Terese Thomas is a resident and citizen of the state of Wisconsin and resides in Green Bay, Wisconsin.

18.    Defendant It's A New 10, LLC is incorporated in Delaware, with its principal place of business located at NE 7th Ave., Miami, Florida 33150.

### V. FACTUAL ALLEGATIONS

#### A.    Hair Growth and Repair

19.    Hair growth begins in the follicle, where the keratin proteins are formed. Chemical bonds called disulfide bonds stitch together keratin proteins to make hair strong and resilient.

20.    As the hair begins to grow, it pushes out of the follicle and through the skin, where it can then be seen. Tiny blood vessels at the base of every follicle feed the hair root to keep it growing, but once the hair is at the skin's surface, the cells within the hair are not alive anymore.[8]

21.    Because hair is not alive once it is at the skin's surface, it cannot heal once it is damaged or injured.  Consequently, once hair is damaged or injured, it can only heal through new growth, while the damaged hair will remain just that – damaged.

22.    Hair treatments, such as conditioners, can temporarily disguise the symptoms of damaged hair by smoothing, moisturizing or lubricating the hair; however, any benefits are merely cosmetic, doing nothing to change the underlying damage. This is because hair cannot truly be repaired.  In other words, hair damage is permanent.

---

[8] *Your Hair*, NEMOURS KIDSHEALTH, https://kidshealth.org/en/kids/hair.html (last visited Mar. 9, 2022).

23.     Some treatments can mend some of this damage, but this must be done by chemically altering the linkages between the keratin proteins, which cannot be achieved through use of over-the-counter shampoo and conditioning products, such as the It's A 10 Products. These treatments are expensive and must be done in professional settings under controlled conditions to receive a satisfactory result. Even under these strict conditions, repair to an original state is still not possible.

**B.      It's A 10 Products**

24.     It's A 10 is a premium haircare brand that promotes itself as "[t]ruly miracle haircare."[9] It was founded by Carolyn Aronson, a hairstylist and salon owner who continues to hold active cosmetology licenses in multiple states, including in the state of Florida.[10]

25.     It's A 10 sells a variety of haircare products, including its Miracle Repair collection, which is comprised of products designed to "repair & restore hair's ultimate beauty,"[11] and includes the Hair Repair Products at issue in this case.

26.     All of the Products utilize identical blue-colored packaging which conspicuously and uniformly state "miracle repair" on the front label where they cannot be missed by consumers.

27.     Examples of the Hair Repair Products' labeling are reproduced below[12]:

---

[9] *Our Founder*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/pages/our-founder (last visited Feb. 11, 2022).

[10] *Licensee Details*, FLA. DEP'T BUS. & PROF'L REGUL., https://www.myfloridalicense.com/LicenseDetail.asp?SID=&id=4E7AC0FF441C83064CDBBE 84AEE1398F (last visited Mar. 29, 2022).

[11] *Potion 10 Collection*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10-collection (last visited Feb. 11, 2022).

[12] *It's A 10 Potion 10 Miracle Instant Repair Leave-In*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10-collection/products/potion-10-miracle-instant-repair-leave-in-2; *It's A 10 Potion 10 Miracle Repair Daily Shampoo*, *supra* note 3; *It's A 10 Potion 10 Miracle Repair Daily Conditioner*, *supra* note 4.







28.     On their face, the Hair Repair Products' labels consistently and unambiguously promise to "repair" hair.

C.     <u>**Defendant's Representations Mislead Consumers**</u>

29.     Defendant knows or should know its Products do not repair damaged hair. Despite this knowledge, Defendant uniformly represents on the Hair Repair Products' labels that the products provide Miracle Hair Repair.

30.     There can be no reasonable dispute that Defendant wants consumers to believe from these representations that the Hair Repair Products *repair hair*.

31.     However, as experts in the hair industry, Defendant should be well aware that the Hair Repair Products cannot actually repair hair.

32.     Despite Defendant's knowledge that the Hair Repair Products do not and cannot repair broken hair, Defendant consistently promotes that its Hair Repair Products "repair breakage."[13]

33.     Defendant makes similar corroborating representations on its social media channels. On February 24, 2022, through its official Instagram page, it posted the following image and accompanying caption to its more than 90,000 followers. This post specifically represents that the Hair Repair Product is "made to repair and restore" hair and "correct damaged tresses," and it is "enhanced with an extra dose of repair and restoration"[14]:

---

[13] *Everything You Need to Know About Dry and Damaged Hair*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/blogs/hair-guides/dry-hair-guide (last visited Feb. 11, 2022).
[14] It's     A     10     Haircare     (@itsa10haircare),     INSTAGRAM, https://www.instagram.com/p/CaXa_VCFTnL/?utm_medium=copy_link (last visited Mar. 29, 2022).



34.     Another Instagram post from February 2021 states "Our Potion 10 Collection was *specifically designed to restore and repair damaged hair*."[15] The original post is reproduced below[16]:



35.     In addition to the label representations, Defendant's marketing corroborates its attempt to convince consumers that its Products repair damaged hair, including, but not limited to, the following representations made on its own website and those of its authorized third-party retailers[17]:

---

[15]     It's A 10 Haircare (@itsa10haircare), INSTAGRAM, https://www.instagram.com/p/CK10FP9rq8T/?utm_medium=copy_link (last visited Mar. 29, 2022) (emphasis added).

[16] *Id.*

[17] *See generally* IT'S A 10 HAIRCARE, https://itsa10haircare.com/ (last visited Feb. 11, 2022); *It's A 10 Motion 10 Miracle Instant Repair Leave-In*, ULTA BEAUTY, https://www.ulta.com/p/potion-

a. "excellent for repairing";

b. "penetrates deeply into hair to repair breakage";

c. "REPAIR & RESTORE HAIR'S ULTIMATE BEAUTY";

d. "enhanced with an extra dose of repair";

e. "For hair that faces extreme challenges, a magical elixir like It's a 10 Potion 10 is the only solution";

f. "rebuild hair from the inside out";

g. "Our popular leave-in conditioner product is now enhanced with an extra dose of repair and restoration";

h. "Chemical damage, UV damage, and heat styling are all no match for the powerful formula of It's a 10 Potion 10 Miracle Repair Daily Conditioner";

i. "it's a 10," "Potion 10," "Stronger… Softer… with a Simple, Easy Application";

j. "NATURAL INGREDIENTS TO PROTECT AND RESTORE HAIR";

k. "Rose Extract: high levels of Vitamin C and other antioxidants make this botanical compound excellent for repairing damage brought on by aging, UV light, heat, and other environmental conditions";

l. "Even the most extreme damage, dryness, or over-processed hair can benefit . . .";

m. "corrects hair with each use";

n. "penetrates deeply into hair to repair breakage";

o. "Coffee Seed Oil- A rich antioxidant with strong anti-aging properties that preserve and restore hair's naturally healthy state";

---

10-miracle-instant-repair-leave-in-xlsImpprod13061007 (last visited Mar. 29, 2022); It's A 10, *Potion 10 Miracle Repair Hair Mask*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miracle-repair-hair-mask-xlsImpprod14021045 (last visited Mar. 29, 2022).

36.     These representations were made to deliver the uniform message to consumers that the It's A 10 Products are capable of repairing hair.  However, these representations are false, deceptive and misleading.

37.     Contrary to Defendant's representation that the It's A 10 Products "penetrate deeply into hair to repair breakage," hair is notoriously difficult to penetrate.  Penetration of the hair can only be achieved through a process that involves breaking disulfide bonds in the cuticle with toxic or corrosive chemicals, or ammonia.  This cannot be achieved with the It's A 10 Products, which do not contain any ingredients capable of deeply penetrating the hair to repair breakage.

38.     Likewise, the It's A 10 Products do not contain any ingredients capable of "rebuild[ing] hair from the inside out."  Thus, while Defendant represents that "chemical damage, UV damage, and heat styling are all no match for the powerful formula of It's a 10 Potion 10 Miracle Repair Daily Conditioner," this type of damage manifests by broken bonds within and between keratin molecules that can only be repaired – and only to a limited extent – with expensive chemicals under controlled conditions by a trained professional.  Chemical damage, UV damage, and damage from heat styling cannot be repaired by the It's A 10 Products.

39.     Even more, the "Vitamin C and other antioxidants" that Defendant represents to consumers are a "botanical compound excellent for repairing damage brought on by aging, UV light, heat, and other environmental conditions," are entirely incapable of repairing damaged hair.

40.     Plaintiff Thomas and putative Class Members fairly and reasonably understand the word "repair" to mean that the Hair Repair Products would mend or fix damage and/or breakage of the hair.

13

41.     Through its labeling and marketing statements, Defendant induced Plaintiff Thomas and putative Class Members to buy the Hair Repair Products because they reasonably believed—and consumers reasonably believe—that the Hair Products repair damaged hair.

42.     As a result of the Hair Repair Products' labeling, along with Defendant's uniform marketing campaign, Defendant has unfairly gained the trust of consumers, who reasonably believe that the products can and will repair their damaged or broken hair.

43.     Defendant was aware that consumers would believe the Hair Repair Products had the ability to repair hair damage, yet at all relevant times Defendant had knowledge that the Hair Repair Products were incapable of actually repairing damaged hair.

44.     Plaintiff Thomas and putative Class Members were injured at the time of purchase because they either would not have purchased the Hair Repair Products at all or they would have paid less than they did had Defendant made truthful advertising statements and disclosed material information concerning the actual benefits of the products, which are merely temporary and cosmetic and do nothing to cure or repair any underlying damage to the hair.

45.     Defendant concealed material facts that would have been important to Plaintiff Thomas and putative Class Members in deciding whether to purchase the Hair Repair Products or to pay the price they did.

46.     Defendant's knowing concealment intended to, and did, deceive reasonable consumers, including Plaintiff Thomas and putative Class Members.

47.     Plaintiff Thomas and putative Class Members reasonably relied upon Defendant's concealment of these material facts and suffered injury as a proximate result of that justifiable reliance. Plaintiff Thomas's claims are economic in nature: Plaintiff Thomas and putative Class Members were injured economically when they purchased the Hair Repair Products.

## VI.  <u>TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS</u>

**A.**     <u>Fraudulent Concealment</u>

48.     All applicable statutes of limitation have been tolled by Defendant's knowing, active, and ongoing fraudulent concealment and denial of the facts alleged herein at all times relevant to this action.

49.     At all times, Defendant knew that the Hair Repair Products were not, in fact, capable of repairing hair.

50.     Despite knowing the truth about the ingredients, nature, and/or capabilities or inabilities of the Hair Repair Products, Defendant concealed the true nature of the products from Plaintiff Thomas and putative Class Members. Defendant did not adequately disclose that the Hair Repair Products, in fact, do not and cannot repair damaged or broken hair.

51.     Any applicable statutes of limitation have, therefore, been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which is ongoing behavior by the Defendant.

**B.**     <u>Discovery Rule</u>

52.     Plaintiff Thomas and putative Class Members did not immediately discover—and could not have discovered through the exercise of reasonable diligence—the full and complete nature of the misrepresentations on Defendant's packaging regarding the Hair Repair Products' inability to repair hair.

53.     Within the period of any applicable statutes of limitations, Plaintiff Thomas and putative Class members could not have discovered, through the exercise of reasonable diligence, that Defendant was—and still is—concealing the Hair Repair Products' inability to repair hair.

54.     Any applicable statutes of limitation have, therefore, been tolled by operation of the discovery rule.

**C.     Estoppel**

55.     Defendant was under a continuous duty to disclose to Plaintiff Thomas and putative Class Members the true character, quality, nature, and abilities of the Hair Repair Products.

56.     Defendant actively concealed the Hair Repair Products' true character, quality, and nature and knowingly misrepresented—or omitted—facts about the Hair Repair Products' abilities—a material fact to consumers.

57.     Plaintiff Thomas and putative Class Members reasonably relied upon Defendant's misrepresentations and/or active concealment of these facts.

58.     Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this action.

**VII.   Fed. R. Civ. P. 9(b) ALLEGATIONS**
**(Affirmative and by Omission)**

59.     Although Defendant is in the best position to know what content it placed on its website(s) and in marketing materials during the relevant timeframe, and the knowledge that it had regarding the ingredients of the Hair Repair Products as well as their inability to repair hair, and is in the best position to know of its failure to disclose the true nature of the Hair Repair Products to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

60.     **WHO**: Defendant made material misrepresentations and/or omissions of fact through the Hair Repair Products' names themselves (e.g., "Miracle Repair Hair Mask"), packaging and/or labeling, website representations, social media, third-party retailers, and other marketing statements, all of which uniformly include statements that Products repair hair, despite

16

the Hair Repair Products' inability to do so, and which omit material information regarding the Hair Repair Products' true nature.

61.     **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Hair Repair Products are not capable of repairing hair, despite misleadingly promising Plaintiff Thomas and putative Class Members that they are capable of repairing hair damage and/or breakage. Thus, Defendant's conduct deceived Plaintiff Thomas and putative Class Members into believing that the Hair Repair Products could repair their hair. Defendant knew or should have known this information is material to reasonable consumers, including Plaintiff Thomas and putative Class Members, in making their purchasing decisions, yet it continued to pervasively market its Products as providing benefits that they could not actually provide.

62.     **WHEN**: Defendant made material misrepresentations and/or omissions during the putative Class periods and at the time Plaintiff Thomas and putative Class Members purchased the Hair Repair Products. These material misrepresentations and/or omissions are ongoing.

63.     **WHERE**: Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions on the labeling and/or packaging, on its website(s) and verified social media accounts, through the Hair Repair Products' names themselves, and through all of its uniform advertising and marketing made by and through authorized third-party retailers.

64.     **HOW**: Defendant made material misrepresentations and/or failed to disclose material facts regarding the Hair Repair Products, including but not limited to their inability to repair hair damage and/or breakage hair.

65.     **WHY**: Defendant made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff Thomas, putative Class Members, and all reasonable consumers to purchase and/or pay for the Hair Repair Products, the effect of which was that Defendant profited by selling the products to many thousands of consumers.

66.     **INJURY**: Plaintiff Thomas and putative Class Members purchased, paid a premium, or otherwise paid the price they did for the Hair Repair Products when they otherwise would not have absent Defendant's misrepresentations and/or omissions.

### VIII.  PLAINTIFF THOMAS'S FACTUAL ALLEGATIONS

67.     Plaintiff Terese Thomas purchased the Hair Repair Products, including Miracle Leave-In Plus Keratin, Potion 10 Miracle Instant repair Leave-In, and Silk Express Miracle Silk Leave-In, Blow Dry Miracle Glossing Leave-In, and Miracle Leave-In Light. She purchased the Hair Repair Products in November 2021 online through Ulta Beauty and at her local Ulta Beauty retailer in Green Bay, Wisconsin.  She paid $10.49 for Miracle Leave-In Plus Keratin, $12.49 for Potion 10 Miracle Instant Repair Leave-In, $11.99 for Silk Express Miracle Leave-In, $12.49 for Blow Dry Miracle Glossing Leave-In, and a similar price for Miracle Leave-In Light.

68.     Plaintiff Thomas purchased the Hair Repair Products based on her belief that the products were capable of repairing her damaged and/or broken hair.

69.     Plaintiff Thomas was willing to pay the price she paid for the Hair Repair Products because she believed the purported hair repair benefits would actually repair her damaged and/or broken hair. She knew that her long hair was damaged and had tried various products by different brands and found none of them worked.

70.     Plaintiff Thomas was specifically drawn to the Hair Repair Products based on the Products' names and purported benefits, including the Miracle Hair Repair representations, which

18

were uniformly and conspicuously displayed on the Hair Repair Products' front labels. Ms. Thomas relied on these representations when purchasing the Hair Repair Products, and based on these representations, Ms. Thomas reasonably believed that the Hair Repair Products would actually repair her hair.

71.     Plaintiff Thomas paid a premium because she believed that Hair Repair Products would repair her hair.

72.     Plaintiff Thomas looked at the Hair Repair Products' packaging prior to her purchase and specifically saw the promise to repair hair.

73.     If Plaintiff Thomas had been aware of the true nature of the Hair Repair Products, and their inability to effectively repair hair damage and/or breakage, she would not have purchased the Hair Repair Products or would have paid significantly less. Therefore, she did not receive the benefit of her bargain.

74.     As a result of Defendant's acts, including its affirmative misrepresentations and omissions, Plaintiff Thomas has incurred damages, including economic damages.

75.     On May 23, 2022, Plaintiff sent a detailed notice and demand for corrective action on behalf of himself and all others similarly situated, via USPS Certified Mail. The notice and demand specifically notified Defendant of Plaintiff's various claims for breaches of express and implied warranties, unjust enrichment, and violations of the Wisconsin Deceptive Trade Practices Act. Although the Certified Mail Return Receipt was received by Plaintiff's counsel, the Defendant failed to respond to the notice and demand.

## IX.  CLASS ACTION ALLEGATIONS

76.     Plaintiff Thomas brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Nationwide Class:

> **During the fullest period allowed by law, all residents of the United States who purchased the Products**

77.     Plaintiff Thomas brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Wisconsin Class:

> **During the fullest period allowed by law, all persons residing in the State of Wisconsin who purchased the Products.**

78.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

79.     Plaintiff Thomas reserves the right to modify the class definitions, if necessary, to include additional Products which have been similarly misrepresented by Defendant as having the ability to repair hair.

80.     **Numerosity**: Class Members are so numerous that joinder of all Class Members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout the United States. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class

20

Members are readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

81.     **Typicality**: The claims of the representative Plaintiff are typical in that the Plaintiff, like all putative Class Members, purchased the Hair Repair Products, formulated, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff Thomas, like all putative Class Members, has been damaged by Defendant's misconduct in that, among other things, she has incurred or will continue to incur damage as a result of overpaying for the Hair Repair Products that are not capable of repairing her damaged hair. Furthermore, the factual basis of Defendant's misconduct is common to all putative Class Members because it engaged in systematic, false, and misleading behavior that results in the same injury to all Class Members.

82.     **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because Defendant acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, among others:

      a.      Whether the Hair Repair Products are actually capable of repairing damaged hair;

      b.      Whether Defendant's practices in labeling and marketing the Hair Repair Products tend to mislead reasonable consumers into believing that the Hair Repair Products can repair damaged hair;

      c.      Whether Defendant omitted or failed to disclose material information to Plaintiff Thomas and putative Class Members regarding the Hair Repair Products;

      d.      Whether Defendant breached the implied warranty of merchantability relating to the Hair Repair Products;

      e.      Whether Defendant's breached express warranties relating to the Hair Repair Products;

f.      Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Hair Repair Products that do not "repair" damaged hair;

g.      Whether Defendant engaged in false or misleading advertising by selling and/or marketing the Hair Repair Products;

h.      Whether Defendants were unjustly enriched at the expense of Plaintiff and class members in connection with the Hair Repair Products;

i.      Whether Plaintiff Thomas and putative Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

j.      Whether Plaintiff Thomas and putative Class Members either paid a premium for the Hair Repair Products that they would not have paid but for the false labeling and marketing of the Hair Repair Products or would not have purchased them at all;

k.      Whether Plaintiff Thomas and putative Class Members have been injured and the proper measure of their losses as a result of those injuries; and

l.      Whether Plaintiff Thomas and putative Class Members are entitled to injunctive, declaratory, or other equitable relief.

83.     **Adequate Representation**: Plaintiff Thomas will fairly and adequately protect the interests of putative Class Members. She has no interests antagonistic to those of putative Class Members. Plaintiff Thomas retained attorneys experienced in the prosecution of class actions, including consumer class actions, and Plaintiff Thomas intends to prosecute this action vigorously.

84.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff Thomas and putative Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class Members as a whole. Unless a class-wide injunction is issued, Defendant will continue to, or allow its resellers to, advertise, market, promote, and sell the Hair Repair Products in an

unlawful and misleading manner, as described throughout this Complaint, and putative Class Members will continue to be misled, harmed, and denied their rights under the law.

85.     Plaintiff Thomas has standing to make claims for injunctive relief because she may purchase another one of the Hair Repair Products. Defendant has acted and refused to act on grounds that apply generally to the Classes, such that final injunctive relief and corresponding declaratory relief is appropriate with respect to the Classes as a whole.

86.     If Defendant is allowed to continue the practices of manufacturing, marketing and selling the Hair Repair Products, and failing to disclose that they cannot repair damaged hair to consumers, unless injunctive or declaratory relief is granted, Plaintiff Thomas and putative Class Members will not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged herein.

87.     Plaintiff Thomas further seeks injunctive and declaratory relief requiring Defendant to cease its unfair, deceptive and unlawful conduct, including the following:

> a.     Undertake an immediate public information campaign to inform consumers the truth about the Hair Repair Products;
>
> b.     Modify the offending representations made by Defendant on the Hair Repair Products' labeling.

88.     Plaintiff Thomas also seeks a declaration that the Hair Repair Products cannot repair broken hair, which was known to Defendant and unknown to consumers at the time Plaintiff Thomas and putative Class Members purchased the Hair Repair Products.

89.     Plaintiff and putative Class Members have been harmed and will experience irreparable future harm should Defendant's conduct not be enjoined because they will be unable to trust the labeling of the Hair Repair Products and will have to bear the costs associated therewith if Defendant continues to fail and refuse to provide adequate remuneration to consumers.

90.   **Predominance and Superiority**: Plaintiff Thomas and putative Class Members all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of their individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

91.   Plaintiff Thomas knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

92.   Defendant acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

## COUNT I
### Breach Of Express Warranty
### (On Behalf of Plaintiff Thomas and the Classes)

93.   Plaintiff Thomas hereby adopts and incorporates by reference the allegations contained in paragraphs 1–92 as though fully set forth herein.

94.   Plaintiff Thomas and putative Class Members purchased the Hair Repair Products either directly from Defendant or through Defendant's authorized retailers.

95.   Defendant is and was at all times a merchant and under Fla. Sta. § 672.104.

96.     At all relevant times, Plaintiff Thomas and putative Class Members were buyers under Fla. Stat. § 672.103.

97.     At all times referenced herein, the Hair Repair Products were goods under Fla. Sta. § 672.105.

98.     In connection with its sale of the Hair Repair Products, Defendant, as the designer, manufacturer, marketer, distributor or seller, expressly warranted that the Hair Repair Products would repair hair.

99.     Defendant's warranty representations consist of the Hair Repair Products' names, each of which explicitly include the term "repair," and Defendant's pervasive marketing campaign, including the representations described herein that are made online on Defendant's website and official social media channels, by and through its authorized retailers, and on its labeling and/or packaging.

100.    The express warranties covering the Hair Repair Products were a material part of the bargain between Defendant and consumers. At the time it made these express warranties, Defendant knew reasonable consumers were purchasing the Hair Repair Products because they believed it was capable of repairing hair, as it was labeled and marketed.

101.    Each of the Hair Repair Products has an identical or substantially identical product representation(s) as they each contain the term "repair" in their product name. Furthermore, the Hair Repair Products are marketed and advertised in an identical or substantially identical way.

102.    Defendant breached its express warranties by selling the Hair Repair Products that were, in actuality, incapable of repairing broken and/or damaged hair as promised in the Hair Repair Products' names, labeling, and marketing. Defendant breached the warranty because it sold

the Hair Repair Products which could not repair hair, which was known to Defendant and unknown to consumers at the time of sale.

103.    Defendant further breached its express written warranties to Plaintiff Thomas and putative Class Members in that the Hair Repair Products are incapable of fulfilling their promise to repair hair at the time they leave the manufacturing plant and on the first day of purchase, and by failing to disclose and actively concealing the true benefits (or lack thereof) of the Hair Repair Products from consumers.

104.    The Hair Repair Products that Plaintiff Thomas and putative Class Members purchased do not and cannot repair broken or damaged hair, and thus suffered the loss of the product, loss of use of the product, and loss of the benefit of their bargain. Defendant's warranty expressly applies to the original purchaser, creating privity between Defendant on the one hand, and Plaintiff Thomas and putative Class Members on the other.

105.    Likewise, it was reasonably foreseeable that Plaintiff Thomas and putative Class Members would be the intended beneficiaries of the Hair Repair Products, creating privity or an exception to any privity requirement. Plaintiff Thomas and putative Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Hair Repair Products and have no rights under the warranty agreements provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only and Plaintiff Thomas and putative Class members were the intended beneficiaries of the Hair Repair Products.

106.    Defendant has been provided sufficient notice of its breaches of the express warranties associated with the Hair Repair Products.

107.    Specifically, on May 23, 2022, Plaintiff sent a detailed notice and demand for corrective action on behalf of himself and all others similarly situated. The notice and demand specifically notified Defendant of Plaintiff's claims for breaches of express warranties; however, Defendant failed to respond.

108.    As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff Thomas and putative Class Members suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to, the cost of diminution in value. Plaintiff Thomas and putative Class Members suffered damages at the point-of-sale stemming from their overpayment for the Hair Repair Products, in addition to the loss of value of the product and its intended benefits.

## COUNT II
### Breach Of Implied Warranty
### (On Behalf of Plaintiff Thomas and the Classes)

109.    Plaintiff Thomas hereby adopts and incorporates by reference the allegations contained in paragraphs 1–92 as though fully set forth herein.

110.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Hair Repair Products.

111.    The Products are goods within the relevant laws and Defendant knew or had reason to know of the specific use for which the Hair Repair Products, as goods, were purchased.

112.    The implied warranty of merchantability included with the sale of each Hair Repair Product means that Defendant warranted that the Hair Repair Products would be fit for the ordinary purposes for which the Hair Repair Products were used and sold, and were not otherwise injurious to consumers, that the Hair Repair Products would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant.

This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiff Thomas, and putative Class Members.

113.    Defendant breached the implied warranty of merchantability because the Hair Repair Products are not fit for their ordinary purpose of providing repair to consumers' damaged and/or broken hair because no haircare product, including the Hair Repair Products which are the subject of this action, are capable of actually repairing dead hair. As further alleged herein, the only way to repair damaged hair is to cut off the damaged portion and allow new growth to replace it, or to a lesser extent, with expensive treatments that must be administered by a trained professional under highly controlled conditions in a salon setting.

114.    The aforementioned problems associated with the Hair Repair Products mean they are incapable of repairing hair, and therefore, there is a breach of the implied warranty of merchantability.

115.    Defendant's warranty expressly applies to the original purchaser and any succeeding owner of the Hair Repair Products, creating privity between Defendant on the one hand, and Plaintiff Thomas and putative Class Members on the other.

116.    Nonetheless, privity is not required because Plaintiff Thomas and putative Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Hair Repair Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only and Plaintiff Thomas and putative Class Members were their intended beneficiaries.

117.    Likewise, it was reasonably foreseeable that Plaintiff Thomas and putative Class Members would be the intended beneficiaries of the Hair Repair Products and warranties.

28

118.    Defendant impliedly warranted that the Hair Repair Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Hair Repair Products manufactured, supplied, distributed, and/or sold by Defendant were capable of repairing hair upon use; and (ii) a warranty that the Hair Repair Products would be fit for their intended use while they were being used by consumers.

119.    Contrary to the applicable implied warranties, the Hair Repair Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff Thomas and putative Class Members with haircare products that are capable of repairing broken and/or damaged hair. Instead, the Hair Repair Products were and are incapable of repairing hair, as alleged herein.

120.    Defendant breached the implied warranties because the Hair Repair Products were sold with the inability to repair hair, which substantially reduced and/or prevented the Hair Repair Products from functioning as a hair repair product.

121.    On May 23, 2022, Plaintiff sent a detailed notice and demand for corrective action on behalf of himself and all others similarly situated. The notice and demand specifically notified Defendant of Plaintiff's claims for breaches of implied warranties; however, Defendant failed to respond.

122.    As a direct and proximate result of the foregoing, Plaintiff Thomas and putative Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT III**
**Violations of the Wisconsin Deceptive Trade Practices Act,**
**Wis. Stat. § 100.18**
**(On behalf of Plaintiff Thomas and the Wisconsin Class)**

29

123.    Plaintiff Thomas hereby adopts and incorporates by reference the allegations contained in paragraphs 1–92 as though fully set forth herein.

124.    This claim is brought on behalf of Plaintiff Thomas individually and on behalf of the Wisconsin Class.

125.    Defendant is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

126.    Plaintiff Thomas and Wisconsin Class Members are members of "the public," as defined by Wis. Stat. § 100.18(1).

127.    With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendant to members of the public for sale, use, or distribution, Defendant made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

128.    Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

129.    Defendant's deceptive acts, practices, plans, and schemes include:

    a.    Misrepresenting the true nature and/or benefits of the Hair Repair Products;

    b.    Omitting, suppressing, and concealing the material fact that the Hair Repair Products are unable to repair damaged and/or broken hair;

    c.    Naming and labeling the Hair Repair Products "repair," despite its knowledge that the Hair Repair Products did not and could not repair hair.

130.     Defendant intended to mislead Plaintiff Thomas and Wisconsin Class Members and induce them to rely on its misrepresentations and omissions.

131.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the Hair Repair Products' abilities and/or benefits.

132.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Thomas and Wisconsin Class Members, that the Hair Repair Products were capable of repairing broken and/or damaged hair.

133.     Defendant had a duty to disclose the above-described facts due to the circumstances of this case.

134.     Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

135.     Defendant acted intentionally, knowingly, and maliciously to violate the Wisconsin Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Thomas and Wisconsin Class Members' rights.

136.     On May 23, 2022, Plaintiff sent a detailed notice and demand for corrective action on behalf of himself and all others similarly situated. The notice and demand specifically notified Defendant of Plaintiff's claims for violations of the Wisconsin Deceptive Trade Practices Act; however, Defendant failed to respond.

137.     As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff Thomas and Wisconsin Class Members have suffered and will continue to suffer injury, including ascertainable losses of money or property.

138.     Defendant had an ongoing duty to consumers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

139.     Plaintiff Thomas and Wisconsin Class Members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

**Count IV**
**Unjust Enrichment**
**(On behalf of Plaintiff Thomas and the Wisconsin Class)**

140.     Plaintiff Thomas hereby adopts and incorporates by reference the allegations contained in paragraphs 1–92 as though fully set forth herein.

141.     Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Hair Repair Products, of which Defendant had knowledge.

142.     By its wrongful acts and omissions described herein, including selling the Hair Repair Products which are not capable of repairing hair, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

143.     Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

144.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

145.     It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Hair Repair Products.

146.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Hair Repair

Products on the same terms or for the same price had they known that the Products were incapable of repairing hair and were not fit for their intended use.

147.    Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Hair Repair Products were actually capable of repairing hair as uniformly represented by Defendant in advertising, including on its website and on Product labels and packaging.

148.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

149.    When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Hair Repair Products was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Hair Repair Products.

150.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiff Thomas as Class Representative of the Classes;

C.    Name Plaintiff Thomas's counsel as Class Counsel for the Classes;

D.      Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff Thomas and putative Class Members in an amount to be determined at trial;

E.      Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

F.      Award Plaintiff Thomas and putative Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.      Award Plaintiff Thomas and the putative Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.      Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff Thomas demands a trial by jury on all issues to triable.

Dated: July 13, 2022                Respectfully submitted,

*/s/ Rachel Soffin*
Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
FL Bar No: 18054
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
*rsoffin@milberg.com*

Melissa S. Weiner*
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
T: (612) 389-0600
*mweiner@pswlaw.com*

Harper T. Segui*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
T: 919-600-5000

34

*hsegui@milberg.com*

Erin Ruben*
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
*eruben@milberg.com*

*\*Application to be admitted pro hac vice is forthcoming
 Attorneys for Plaintiff & Proposed Classes*