**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| TERESE THOMAS, MELANIE GERARD, JOLIE HAMILTON, DEBORAH MANNING, AND ELIZABETH NELSON, individually and on behalf of all others similarly situated,  Plaintiffs,  v.  IT'S A NEW 10, LLC d/b/a IT'S A 10 HAIRCARE,  Defendant. | CASE NO. 1:22-cv-22149-KMM (consolidated with 1:23-cv-20503)  **Jury Trial Demanded** |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Terese Thomas, Melanie Gerard, Jolie Hamilton, Deborah Manning, and Elizabeth Nelson ("Plaintiffs"), bring this Consolidated Class Action Complaint for equitable relief and damages against Defendant It's A New 10, LLC d/b/a It's A 10 Haircare ("It's A 10" or "Defendant"), regarding the deceptive labeling, marketing, and sale of It's A 10's "Potion 10 Miracle Repair®" hair repair products. Plaintiffs, individually and on behalf of all others similarly situated, complain and allege the following based upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**I. NATURE OF THE ACTION**

1.      This action seeks to remedy the deceptive and misleading business practices related to It's A 10's marketing and sale of its "Potion 10 Miracle Repair®" line of haircare products

("Miracle Repair Products" or "Products").[1] Defendant's deceptive acts begin with the name of each of the Products: "Potion 10 Miracle Repair®." Through the labeling of its Products, Defendant promises that the Products can actually *repair* damaged hair, but, unbeknownst to the unsuspecting consumers, it is not possible to *repair* damaged hair.

2.      All consumers are exposed to this deceptive labeling at the point of purchase. On the front and center of each of the Products, Defendant uniformly and prominently displays its claim that the Products provide miracle repair in white font on a contrasting dark blue background, where it cannot be missed by consumers. An example is shown below.[2]



---

[1] The action concerns all It's A 10 haircare products in the "Potion 10 Miracle Repair®" collection, which are labeled to repair hair, including but not limited to: It's A 10 Potion 10 Miracle Instant Repair Leave-In Conditioner; It's A 10 Potion 10 Miracle Instant Repair Daily Conditioner; It's A 10 Potion 10 Miracle Repair Daily Shampoo; It's A 10 Potion 10 Miracle Repair Hair Mask Deep Conditioner; and It's A 10 Potion 10 Miracle Instant Repair Leave-In Conditioner (collectively, the "Products"). *See, e.g.*, *Potion 10 Collection*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10-collection (last visited Feb. 9, 2022).
[2] *It's A 10 Potion 10 Miracle Repair Daily Shampoo*, IT'S A 10, https://itsa10haircare.com/products/potion-10-miracle-repair-shampoo?_pos=2&_sid=66b7a61da&_ss=rshampoo?_pos=2&_sid=66b7a61da&_ss=r                    (last visited Apr. 5, 2022).

CLASS ACTION COMPLAINT

3.      There is no mystery to unravel when the name of the Products—Miracle Repair®—is the misrepresentation itself. Defendant has trademarked the Miracle Repair Products, confirming the importance of this message to consumers, particularly in the competitive haircare product market.

4.      Defendant's website representations confirm that it is conscious of its consumers' concerns about hair repair, including that these representations are material to reasonable consumers, and that the label claims on the Products are meant to convince consumers that the Products actual repair hair, including with the following "Hair Repair Representations"[3]:

a.      "excellent for **repairing**"

b.      "penetrates deeply into hair to **repair breakage**"

c.      "**REPAIR & RESTORE** HAIR'S ULTIMATE BEAUTY"

d.      "enhanced with an **extra dose of repair**"

e.      "**rebuild hair from the inside out**"

f.      "Our popular leave-in conditioner product is now enhanced with an **extra dose of repair and restoration**"

g.      "NATURAL INGREDIENTS TO PROTECT AND **RESTORE HAIR**"

h.      "Rose Extract: high levels of Vitamin C and other antioxidants make this botanical compound excellent for **repairing damage** brought on by aging, UV light, heat, and other environmental conditions"

i.      "**corrects hair** with each use"

j.      "penetrates deeply into hair to **repair breakage**"

---

[3] *See generally* IT'S A 10 HAIRCARE, https://itsa10haircare.com/ (last visited Feb. 11, 2022); *It's A 10 Motion 10 Miracle Instant Repair Leave-In*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miracle-instant-repair-leave-in-xlsImpprod13061007 (last visited Jan. 20, 2023); It's A 10, *Potion 10 Miracle Repair Hair Mask*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miraclerepair-hair-mask-xlsImpprod14021045 (last visited Feb. 11, 2022) (emphasis added)

3

k.      It's a 10 Potion 10 Miracle Repair Shampoo **actually strengthens and corrects hair** with each use.

5.      To the detriment of consumers, however, the Products do not repair hair.

6.      The Miracle Repair Products are high-end products that come with a high-end price. Consumers are willing to pay these prices because of the promise that they will repair hair.

7.      Defendant uniformly and intentionally advertises and markets the Products to lead reasonable consumers to believe that the Miracle Repair Products can actually repair hair, rather than just an illusion of changing the look and feel of their hair.

8.      Defendant's uniform advertising and marketing of the Miracle Repair Products is designed with the goal of enticing consumers to purchase the Miracle Repair Products, instead of other competing haircare products, based on Defendant's bold promise that the Products can repair damaged hair.

9.      Hair health is a major concern for American consumers, and for women in particular. In a recent nationwide survey conducted by InStyle magazine, 60% of women surveyed listed hair breakage as a concern.[4] These are the exact consumers Defendant targets with its promises of instant and deep hair repair.

10.      Unfortunately for the millions of consumers who want to repair their damaged hair, the Miracle Repair Products cannot deliver the promised result.

11.      According to expert analysis conducted on behalf of Plaintiffs, including review of the Products' ingredients, the Miracle Repair Products do not actually repair damaged hair, because- the Miracle Repair Products' ingredient formulation is incapable of doing so. Hair is

---

[4] Laura Brown, *We Asked Women Across the Country All About Their Hair*, INSTYLE, https://www.instyle.com/beauty/ava-duvernay-cover-march-2022 (last visited Jan. 20, 2023).

CLASS ACTION COMPLAINT

primarily composed of a family of proteins called keratin, which is dead organic matter. Thus, because hair is a collection of the remnants of dead cells, once damaged, it is beyond repair and certainly cannot be repaired by in-home treatments.

12.     Reasonable consumers, including Plaintiffs, believe that a product promised to provide miracle repair will in fact repair their hair. In reality, the Miracle Repair Products, at most, can only create the temporary *illusion* that the user's hair has been repaired because nothing in the Miracle Repair Products can actually reach and mend damaged keratin proteins. The Products can and sometimes do add material to the hair fiber, often as a coating on the outside, that temporarily alters the look and feel of the hair but require frequent re-application to obtain the same illusion of repaired hair. And the performance of the Products is just that—an illusion.

13.     Consumers, including Plaintiffs, reasonably believe the Miracle Repair Products will repair hair because that is exactly the message Defendant intends to convey. In addition to the express promise of "Miracle Repair®" on the Products' labels, Defendant pervasively promotes the Products as capable of repairing hair across its various marketing channels, leaving no doubt that Defendant wants consumers to believe the Products will repair their hair. Such claims include, *inter alia*, "actually strengthen[] and correct hair with each use,"[5] and that it "rebuild[s] hair from the inside out," and provides "repair and restoration" to hair so that "the core of the hair shaft is strengthened and restored, creating a refined outer cuticle, smoother ends, and all the other classic characteristics of strong healthy hair."[6]

---

[5]  *It's A 10 Potion 10 Miracle Repair Daily Shampoo*, Iᴛ's A 10, -10-miracle-repairshampoo?_pos=2&_sid=66b7a61da&_ss=r (last visited Apr. 5, 2022).

[6]  *It's A 10 Potion 10 Miracle Repair Daily Conditioner*, Iᴛ's A 10, https://itsa10haircare.com/products/potion-10-miracle-repairconditioner?_pos=1&_sid=66b7a61da&_ss=r (last visited Apr. 5, 2022).

Cʟᴀss Aᴄᴛɪᴏɴ Cᴏᴍᴩʟᴀɪɴᴛ

14.     Consumers, including Plaintiffs, willingly purchase and/or pay a premium for these Products based on Defendant's pervasive and uniform marketing which expressly—and deceptively—includes a promise that the Products will repair damaged hair. Even worse, the Products require frequent use to continue the illusion of hair repair, and essentially trap the consumer into an endless cycle of repeated purchases of the same deceptively marketed product. But for these misrepresentations, Plaintiffs and Class Members would not have purchased the Miracle Repair Products on the same terms or for the same price.

15.     Defendant formulates, designs, manufactures, markets, advertises, distributes, and sells the Miracle Repair Products to consumers throughout the United States. These Products are sold by various third-party retailers.

16.     The global haircare market is a multi-billion-dollar industry and is projected to reach $134 billion in 2028.[7] Hair repair products play a prominent role in this industry. Defendant is well aware of this financial opportunity and has made false promises to consumers that the Miracle Repair Products will repair hair in an effort to garner market share and profits at the expense of consumers. Defendant's misrepresentations are made to deceive reasonable consumers—desperate to repair their hair—into believing the Miracle Repair Products will do just that.

17.     The Miracle Repair Products, however, are incapable of delivering this promise.

18.     As a result, Plaintiffs and proposed Class Members suffered economic injury at the point of sale because the Products were worth less than what they paid for. Plaintiffs and proposed Class Members would not have purchased or overpaid for the Products, but for Defendant's false

---

[7] *Hair and Scalp Care Market Size Worth $134.3 Billion by 2028* (November 2021), GRAND VIEW RESEARCH, www.grandviewresearch.com/press-release/global-hair-care-market (last visited Jan. 20, 2023).

CLASS ACTION COMPLAINT

statements, misrepresentations, and/or omissions of material facts. The Products Plaintiffs and proposed Class Members purchased and used did not conform to Defendant's promises and warranties and, as a result, Plaintiffs and proposed Class Members were deprived the benefit of their bargain.

19.     Defendant's promises, like its customers' hair, remain broken. Plaintiffs therefore seek injunctive and other equitable relief, damages, restitution, costs of suit and reasonable attorneys' fees on behalf of themselves and the proposed Classes.

## II. JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (a) there are 100 or more proposed Class Members; (b) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (c) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

21.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over Defendant. Defendant has substantial aggregate contacts in this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including in the state of Florida. Defendant regularly conducts and transacts business, markets its Products to consumers, and distributes its Products to salons and other retailers in Florida and throughout the United States. Defendant, therefore, has purposefully availed itself of the laws of Florida and the United States.

23.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and benefits of the Products and sales of the Products at issue, occurred within this District. Additionally, Defendant's principal place of business is located in Miami, Florida. Accordingly, Defendant has purposefully availed itself of the laws of this District.

## III. PARTIES

**Plaintiffs**

24.     Plaintiff Terese Thomas is a resident and citizen of the state of Wisconsin and resides in Green Bay, Wisconsin. As described below, Plaintiff Terese Thomas purchased at least one of the Products at issue in this lawsuit based on Defendant's misrepresentations. But for Defendant's misrepresentations and/or omissions, Plaintiff Terese Thomas would not have purchased the Products, or would have paid less for them.

25.     Plaintiff Melanie Gerard is a resident and citizen of the state of Washington and resides in Spokane, Washington. As described below, Plaintiff Melanie Gerard purchased at least one of the Products at issue in this lawsuit based on Defendant's misrepresentations. But for Defendant's misrepresentations and/or omissions, Plaintiff Melanie Gerard would not have purchased the Products, or would have paid less for them.

26.     Plaintiff Jolie Hamilton is a resident and citizen of the state of Virginia and resides in Virginia Beach, Virginia. As described below, Plaintiff Jolie Hamilton purchased at least one of the Products at issue in this lawsuit based on Defendant's misrepresentations. But for Defendant's misrepresentations and/or omissions, Plaintiff Jolie Hamilton would not have purchased the Products, or would have paid less for them.

CLASS ACTION COMPLAINT

27.     Plaintiff Deborah Manning is a resident and citizen of the state of Massachusetts and resides in Quincy, Massachusetts. As described below, Plaintiff Deborah Manning purchased at least one of the Products at issue in this lawsuit based on Defendant's misrepresentations. But for Defendant's misrepresentations and/or omissions, Plaintiff Deborah Manning would not have purchased the Products, or would have paid less for them.

28.     Plaintiff Elizabeth Nelson is a resident and citizen of the state of Illinois and resides in Lombard, Illinois. As described below, Plaintiff Elizabeth Nelson purchased at least one of the Products at issue in this lawsuit based on Defendant's misrepresentations. But for Defendant's misrepresentations and/or omissions, Plaintiff Elizabeth Nelson would not have purchased the Products, or would have paid less for them.

**Defendant**

29.     Defendant It's A New 10, LLC is incorporated in Delaware and its principal place of business is located at NE 7th Ave., Miami, Florida 33150.

30.     Defendant manufactures, markets, distributes, sells and/or causes the manufacture, marketing, labeling, distribution and sale of the Miracle Repair Products nationwide.

31.     Defendant advertises, markets, and sells the Miracle Repair Products at authorized retailers nationwide and in the state of Florida. Defendant created and/or authorized the false and deceptive labeling, marketing and advertising of the Products.

## IV. FACTUAL ALLEGATIONS

### A.     Hair Growth and Repair

32.     Hair growth begins in the follicle, where the keratin proteins are formed. Chemical bonds called disulfide bonds stitch together keratin proteins to make hair strong and resilient.

CLASS ACTION COMPLAINT

33.     As the hair begins to grow, it pushes out of the follicle and through the skin, where it can then be seen. Tiny blood vessels at the base of every follicle feed the hair root to keep it growing, but once the hair is at the skin's surface, the cells within the hair are not alive anymore.

34.     Because hair is not alive once it is at the skin's surface, it cannot be repaired or restored to a healthy condition once it is damaged or injured. Consequently, once hair is damaged or injured, it can only be repaired or restored through new growth, while the damaged hair will remain just that – damaged.

35.     Some hair treatments can temporarily disguise the symptoms of damaged hair by smoothing, moisturizing or lubricating the hair; however, any benefits are merely cosmetic, doing nothing to change the underlying damage. This is because hair cannot truly be repaired. In other words, hair damage is permanent.

36.     Some treatments can limit some of this damage, but this must be done by chemically altering the linkages between the keratin proteins, which cannot be achieved through use of over-the-counter down-the-drain haircare products, such as It's A 10's Miracle Repair Products. These treatments are expensive and must be done in professional settings under controlled conditions. However, even under these strict conditions, it is still not possible to repair or restore hair to its original unbroken, healthy condition.

**B.     The It's A 10 Brand and the Miracle Repair Claims**

37.     It's A 10 is a premium haircare brand that promotes itself as "[t]ruly miracle haircare."[8]

---

[8] *Our Founder*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/pages/our-founder (last visited Jan. 20, 2023).

38.     It was founded by Carolyn Aronson, a hairstylist and salon owner who continues to hold active cosmetology licenses in multiple states, including in the state of Florida.[9]

39.     It's A 10 sells a variety of haircare products, including its Miracle Repair collection, which is comprised of products designed to "repair & restore hair's ultimate beauty,"[10] and includes the Miracle Repair Products at issue in this case.

40.     It's A 10 intentionally seeks to differentiate the Miracle Repair Products from those that simply improve the appearance of damaged hair or prevent future damage by falsely labeling, marketing and advertising the Products as also being capable of *repairing* hair, which the Products are not capable of doing.

41.     All of the Miracle Repair Products are conspicuously and uniformly labeled with the product name, "Miracle Repair®," which is prominently featured on the front and center of the Product labels, on a contrasting dark background with large light font, where it cannot be missed by consumers.

42.     The Products' "Miracle Repair®" name expressly conveys to consumers that the Products can repair hair by healing or curing hair's damage.

43.     Examples of the Miracle Repair Products' identical labeling are reproduced below:[11]

---

[9] *Licensee Details*, FLA. DEP'T BUS. & PROF'L REGUL., https://www.myfloridalicense.com/LicenseDetail.asp?SID=&id=4E7AC0FF441C83064CDBBE 84AEE1398F (last visited Jan. 20, 2023).

[10] *Potion 10 Collection*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10collection (last visited Feb. 11, 2022).

[11] *It's A 10 Potion 10 Miracle Instant Repair Leave-In*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/collections/potion-10-collection/products/potion-10-miracle-instantrepair-leave-in-2 (last visited Feb. 11, 2022); *It's A 10 Potion 10 Miracle Repair Daily Shampoo*, *supra* n.3; *It's A 10 Potion 10 Miracle Repair Daily Conditioner*, *supra* n.4.






CLASS ACTION COMPLAINT

44.     On their face, the Miracle Repair Products' labels consistently and unambiguously promise to "repair" hair.

**C.     It's A 10's Miracle Repair Products are Not as Represented**

45.     Contrary to Defendant's promises that the Miracle Repair Products offer "miracle repair," according to expert analysis of the Products' ingredients conducted on behalf of Plaintiffs, such results cannot be achieved with the Miracle Repair Products, which do not have an ingredient formulation capable of deeply penetrating the hair to repair damage.

46.     Hair is notoriously difficult to infiltrate. Penetration of the hair can only be achieved through a time-intensive process that involves breaking disulfide bonds in the cuticle with toxic or corrosive chemicals, or ammonia. It cannot be repaired with at-home down-the-drain products, such as the Miracle Repair Products.

47.     Even if a product contains bond-forming ingredients, if hair is not treated with harsh chemicals, these ingredients cannot reach the broken keratin molecules and will simply temporarily coat the hair. Hair's appearance may improve between washes, but these ingredients alone cannot provide any actual repair to damaged hair.

48.     Accordingly, at-home products that do not involve a time-intensive process that includes the use of harsh chemicals to reach broken bonds, like It's A 10's Miracle Repair Products, cannot repair hair.

**D.     It's A 10's Hair Repair Claims are Material to Reasonable Consumers**

49.     Hair health is a major concern for consumers.[12] The global haircare market is a multi-billion-dollar industry and is projected to reach $134 billion in 2028. In the United States,

---

[12] Richard Giles, Donna Petretti, Franziska Wandrey, Juliana Mancini; Aude Lemoine, *Expert Opinions: Hair Repair and Damage Control,* Cosmetics & Toiletries – the Definitive Peer-

the haircare market was estimated to be $47 billion dollars in 2016 and that figure is estimated to exceed $50 billion dollars by 2025.[13]

50.     Growth in demand for products promoting hair health is outpacing that of most other types of haircare products in the industry.[14]

51.     There are an increasing number of consumers purchasing healthy hair products, and those consumers, additionally, are willing to pay significantly more for such products. In 2020, the total amount American consumers spent on *all* of their haircare products was, on average, approximately $5.50 a month.[15] In stark contrast, a *single* It's A 10 Hair Repair Product ranges in cost from $12.49 to $38.99 dollars.[16]

52.     Accordingly, it is no surprise that companies, like It's A 10, are eager to garner market share in this incredibly lucrative and expanding market. In order to do so, these companies, such as Defendant, are well aware that words matter to consumers and, therefore, carefully plan their marketing and labeling of the Products in order to gain consumers' attention and garner market share.

---

Reviewed   Cosmetic   Science   Resource   (Published   February   1,   2021), https://www.cosmeticsandtoiletries.com/research/consumers-market/article/21836018/cosmetics-toiletries-magazine-expert-opinions-hair-repair-and-damage-control (last visited Jan. 20, 2023).

[13] Statista, *Hair care product and shampoo market in the U.S. - Statistics & Facts, Published by Statista Research Department*, (Published February 16, 2022) https://www.statista.com/topics/4552/hair-care-product-market-in-the-us/#dossierKeyfigures (last visited Jan. 20, 2023).

[14] *See* n.12.

[15] Statista, *Average annual expenditure on hair care products per consumer unit in the United States from 2010 to 2020 (in U.S. dollars; United States; Bureau of Labor Statistics,* (Published September  2021),  https://www.statista.com/statistics/304992/us-expenditure-on-hair-care/  (last visited Jan. 20, 2023).

[16] It's a 10 Potion 10 Collection (August 17, 2021), http://web.archive.org/web/20210817143852/https://itsa10haircare.com/collections/potion-10-collection (last visited Jan. 20, 2023).

CLASS ACTION COMPLAINT

53.     It's A 10 unambiguously promotes its Products as capable of repairing hair to capitalize on this growing consumer demand for Miracle Repair Products and to induce consumers to purchase It's A 10's Miracle Repair Products.

54.     It's A 10's express claims that the Products can repair hair, including the "Miracle Repair®" name on the Products' labels, are material. It's A 10's claims are likely to affect consumers' decisions, and did in fact induce Plaintiffs and proposed Class Members, to purchase the Products or pay a premium for the Products.

55.     Contents on Defendant's own website confirm its goal to convince consumers that the Products actually repair hair, rather than the illusion of hair repair by simply and temporarily changing the look and feel of their hair. Defendant's website representations reflect its understanding that consumers are concerned about hair repair, that its label representations (and consistent website representations) regarding hair repair are material to reasonable consumers, and that the label claims on the Products are meant to convince consumers that the Products actual repair hair, including with the following "Hair Repair Representations"[17]:

    a.     "excellent for **repairing**"

    b.     "penetrates deeply into hair to **repair breakage**"

    c.     "**REPAIR & RESTORE** HAIR'S ULTIMATE BEAUTY"

    d.     "enhanced with an **extra dose of repair**"

    e.     "**rebuild hair from the inside out**"

---

[17] *See generally* IT'S A 10 HAIRCARE, https://itsa10haircare.com/ (last visited Feb. 11, 2022); *It's A 10 Motion 10 Miracle Instant Repair Leave-In*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miracle-instant-repair-leave-in-xlsImpprod13061007 (last visited Jan. 20, 2023); It's A 10, *Potion 10 Miracle Repair Hair Mask*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miraclerepair-hair-mask-xlsImpprod14021045 (last visited Feb. 11, 2022) (emphasis added)

CLASS ACTION COMPLAINT

f.      "Our popular leave-in conditioner product is now enhanced with an **extra dose of repair and restoration**"

g.      "NATURAL INGREDIENTS TO PROTECT AND **RESTORE HAIR**"

h.      "Rose Extract: high levels of Vitamin C and other antioxidants make this botanical compound excellent for **repairing damage** brought on by aging, UV light, heat, and other environmental conditions"

i.      "**corrects hair** with each use"

j.      "penetrates deeply into hair to **repair breakage**"

k.      It's a 10 Potion 10 Miracle Repair Shampoo **actually strengthens and corrects hair** with each use.

**E.      It's A 10 Knowingly Misleads Reasonable Consumers with the Miracle Repair Claims**

56.      Reasonable consumers would expect a premier brand's product, from a company whose founder is a hairstylist and salon owner, such as It's A 10, that is named "Miracle Repair®" and pervasively marketed as a product capable of repairing hair, would indeed repair their hair.

57.      Consumers, including Plaintiffs and proposed Class Members, fairly and reasonably believed that the Miracle Repair Products would repair their hair because that was the exact understanding Defendant intended the Products' above-described labeling, marketing and advertising to convey.

58.      Through its labeling of the Products with the "Miracle Repair®" name, Defendant induced Plaintiffs and proposed Class Members to buy the Miracle Repair Products because they reasonably believed that the Miracle Repair Products repair damaged hair.

59.      There can be no reasonable dispute that Defendant wants consumers to believe that the Miracle Repair Products can actually repair hair. The prominently featured "Miracle Repair®" name on the Products' labels expressly and plainly promise that the Products will repair hair.

CLASS ACTION COMPLAINT

60. Moreover, Defendant's other marketing of the Products leaves no question that Defendant intends for consumers to believe its Miracle Repair Products are capable of repairing hair. For example, Defendant consistently promotes that its Miracle Repair Products "repair breakage."[18]

61. Defendant makes similar claims on its social media channels. On February 24, 2022, through its official Instagram page, it posted the following image and accompanying caption to its more than 90,000 followers. This post specifically represents that the Miracle Repair Product is "made to repair and restore" hair and "correct damaged tresses," and it is "enhanced with an extra dose of repair and restoration":[19]



---

[18] *Everything You Need to Know About Dry and Damaged Hair*, IT'S A 10 HAIRCARE, https://itsa10haircare.com/blogs/hair-guides/dry-hair-guide (last visited Feb. 11, 2022).

[19] It's A 10 Haircare (@itsa10haircare), INSTAGRAM, https://www.instagram.com/p/CaXa_VCFTnL/?utm_medium=copy_link (last visited Mar. 29, 2022).

CLASS ACTION COMPLAINT

62.     Another Instagram post from February 2021 states "Our Potion 10 Collection was *specifically designed to restore and repair damaged hair*."[20] The original post is reproduced below:



63.     Defendant's efforts to convince consumers that its Products repair damaged hair also include pervasively promoting the Products as capable of repairing hair on its own website and those of its authorized third-party retailers, including, but not limited to, the following Hair Repair Representations:[21]

---

[20]    It's A 10 Haircare (@itsa10haircare), INSTAGRAM, https://www.instagram.com/p/CK10FP9rq8T/?utm_medium=copy_link (last visited Mar. 29, 2022) (emphasis added).

[21]    *See generally* IT'S A 10 HAIRCARE, https://itsa10haircare.com/ (last visited Jan. 20, 2023); *It's A 10 Motion 10 Miracle Instant Repair Leave-In*, ULTA BEAUTY, https://www.ulta.com/p/motion-10-miracle-instant-repair-leave-in-xlsImpprod13061007 (last visited Jan. 20, 2023); It's A 10, *Potion 10 Miracle Repair Hair Mask*, ULTA BEAUTY, https://www.ulta.com/p/potion-10-miraclerepair-hair-mask-xlsImpprod14021045 (last visited Feb. 20, 2022).

a.   "excellent for repairing"

b.   "penetrates deeply into hair to repair breakage"

c.   "REPAIR & RESTORE HAIR'S ULTIMATE BEAUTY"

d.   "enhanced with an extra dose of repair"

e.   "rebuild hair from the inside out"

f.   "Our popular leave-in conditioner product is now enhanced with an extra dose of repair and restoration"

g.   "Chemical damage, UV damage, and heat styling are all no match for the powerful formula of It's A 10 Potion 10 Miracle Repair Daily Conditioner"

h.   "NATURAL INGREDIENTS TO PROTECT AND RESTORE HAIR"

i.   "Rose Extract: high levels of Vitamin C and other antioxidants make this botanical compound excellent for repairing damage brought on by aging, UV light, heat, and other environmental conditions"

j.   "Even the most extreme damage, dryness, or over-processed hair can benefit . . ."

k.   "corrects hair with each use"

l.   "penetrates deeply into hair to repair breakage"

m.   "Coffee Seed Oil- A rich antioxidant with strong anti-aging properties that preserve and restore hair's naturally healthy state.

64.   These numerous false, deceptive and misleading representations corroborate the product labeling and make clear that Defendant wanted to deliver a uniform message to consumers: the It's A 10 Products are capable of repairing hair, and not just creating the illusion of making it look and feel better temporarily.

65.   Defendant designed and deployed its pervasive labeling, advertising and marketing campaign with the intent that consumers would believe the Miracle Repair Products have the ability to repair hair damage when it knows that the Miracle Repair Products are incapable of repairing damaged hair.

66.     Defendant made false and/or misleading statements about, and concealed, material facts that would have been material to Plaintiffs and proposed Class Members in deciding whether to purchase the Miracle Repair Products or to pay the price they did.

67.     Defendant's affirmative false and/or misleading statements and knowing concealment of material facts were intended to, and did, deceive reasonable consumers, including Plaintiffs and proposed Class Members.

68.     Plaintiffs and proposed Class Members reasonably relied on Defendant's false and/or misleading statements and concealment of material facts and suffered injury as a proximate result of that justifiable reliance.

69.     Plaintiffs and proposed Class Members were injured at the time of purchase because they either would not have purchased the Miracle Repair Products at all or they would have paid less than they did had Defendant made truthful labeling, marketing and advertising statements and disclosed material information concerning the actual benefits of the Products, which are merely temporary and cosmetic and do nothing to remedy or repair any underlying damage to hair.

70.     It's A 10's pervasive labeling, advertising and marketing of the Miracle Repair Products as able to go beyond temporarily creating the illusion of improving the appearance of damaged hair and actually repair damaged hair enables It's A 10 to sell a greater volume of the Products, charge higher prices for the Products, and take away market share from competing products, thereby increasing Defendant's sales and profits.

71.     Plaintiffs' claims are economic in nature: Plaintiffs and proposed Class Members were injured economically when they purchased the Miracle Repair Products.

### F.  Plaintiffs' Facts

*Plaintiff Terese Thomas*

72.  Plaintiff Terese Thomas purchased the It's a 10 Potion Miracle Instant Repair Leave-In (the "Miracle Leave-in Products") at various times, most recently in November 2021 online through Ulta Beauty and at her local Ulta Beauty retailer in Green Bay, Wisconsin.  She paid $12.49 for Potion 10 Miracle Instant Repair Leave-In.

73.  Plaintiff Thomas purchased the Miracle Leave-in Products based on her belief that the products were capable of repairing her damaged and/or broken hair.

74.  Plaintiff Thomas looked at the Miracle Leave-In Products' labels prior to her purchase of the products and saw It's A 10's promise that the products she purchased would repair hair.

75.  Plaintiff Thomas was specifically drawn to the Miracle Leave-In Products based on the products' name—Miracle Repair Leave-In®—which was conspicuously displayed on the front labels of the Miracle Leave-In Products Plaintiff Thomas purchased.

76.  Plaintiff Thomas reasonably understood It's A 10's express label claims to mean that the Miracle Leave-In Products would actually repair her hair.

77.  Plaintiff Thomas relied on It's A 10's express claims about the purported nature of the Miracle Leave-In Products and the products' hair repair benefits, *i.e.*, that the products would actually repair her damaged hair, when she purchased the products.

78.  Because the Miracle Leave-In Products did not in fact repair hair, they were worth less to Plaintiff Thomas than what she paid. Plaintiff Thomas was willing to purchase the products and pay the price she did because, based on It's A 10's express representations that the Miracle

CLASS ACTION COMPLAINT

Leave-In Products would repair her hair, she reasonably expected that the Miracle Leave-In Products would provide the promised hair repair benefits.

79.     Plaintiff Thomas, therefore, suffered an actual economic injury when she purchased the Miracle Leave-In Products that did not conform with Defendant's express promises.

80.     If Plaintiff Thomas had been aware of the true nature of the Miracle Leave-In Products, and their inability to provide the promised benefits, *i.e.*, repair hair damage, she would not have purchased them on the same terms. Plaintiff Thomas paid more for the Miracle Leave-In Products than she would have otherwise as a result of It's A 10's false claims that the Miracle Leave-In Products would repair her hair because she would not have purchased the products or would have paid significantly less for them if she knew that the products would not repair her hair.

81.     As a result of the Miracle Leave-In Products' inability to provide the hair repair benefits promised by It's A 10, Plaintiff Thomas did not receive the benefit of her bargain.

82.     Plaintiff Thomas would like to purchase It's A 10's products in the future if they conform with It's A 10's representations about the products and perform as promised. However, Plaintiff Thomas is currently unable to rely on It's A 10's representations regarding its products in deciding whether to purchase It's A 10's products in the future.

83.     As a direct and proximate result of It's A 10's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Thomas has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Miracle Leave-In Products, in addition to the loss of the benefit of her bargain and the products' intended benefits.

*Plaintiff Melanie Gerard*

84.     Plaintiff Melanie Gerard purchased It's A 10 Miracle Repair Products, including Potion 10 Miracle Repair Leave-In® and Potion 10 Miracle Repair Hair Mask Deep Conditioner® ("Repair Products"). She purchased the Repair Products in the fall of 2021 at her local Fred Meyer in Bonney Lake, Washington.

85.     Plaintiff Gerard sought to purchase hair repair products to repair hair damage caused by a heat treatment to her hair.

86.     Plaintiff Gerard purchased the Repair Products based on her belief that the products were capable of repairing her damaged hair.

87.     Plaintiff Gerard looked at the Repair Products' labels prior to her purchase of the products and saw It's A 10's promise that the products she purchased would repair hair.

88.     Plaintiff Gerard was specifically drawn to the Repair Products based on the products' name—Miracle Repair Leave-In®—which was conspicuously displayed on the front labels of the Repair Products Plaintiff Gerard purchased.

89.     Plaintiff Gerard reasonably understood It's A 10's express label claims to mean that the Repair Products would actually repair her hair.

90.     Plaintiff Gerard relied on It's A 10's express claims about the purported nature of the Repair Products and the products' hair repair benefits, *i.e.*, that the products would actually repair her damaged hair, when she purchased the products.

91.     Because the Repair Products did not in fact repair hair, they were worth less to Plaintiff Gerard than what she paid. Plaintiff Gerard was willing to purchase the products and pay the price she did because, based on It's A 10's express representations that the Repair Products

CLASS ACTION COMPLAINT

would repair her hair, she reasonably expected that the Repair Products would provide the promised hair repair benefits.

92.     Plaintiff Gerard, therefore, suffered an actual economic injury when she purchased the Repair Products that did not conform with Defendant's express promises.

93.     If Plaintiff Gerard had been aware of the true nature of the Repair Products, and their inability to provide the promised benefits, *i.e.*, repair hair damage, she would not have purchased them on the same terms. Plaintiff Gerard paid more for the Repair Products than she would have otherwise as a result of It's A 10's false claims that the Repair Products would repair her hair because she would not have purchased the products or would have paid significantly less for them if she knew that the products would not repair her hair.

94.     As a result of the Repair Products' inability to provide the hair repair benefits promised by It's A 10, Plaintiff Gerard did not receive the benefit of her bargain.

95.     Plaintiff Gerard would like to purchase It's A 10's products in the future if they conform with It's A 10's representations about the products and perform as promised. However, Plaintiff Gerard is currently unable to rely on It's A 10's representations regarding its products in deciding whether to purchase It's A 10's products in the future.

96.     As a direct and proximate result of It's A 10's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Gerard has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Repair Products, in addition to the loss of the benefit of her bargain and the products' intended benefits.

CLASS ACTION COMPLAINT

*Plaintiff Jolie Hamilton*

97.      Plaintiff Jolie Hamilton purchased It's A 10 Miracle Repair Products, including Potion 10 Miracle Repair Leave-In® ("Miracle Repair Leave-In Products"). She purchased the Miracle Repair Leave-In Products numerous times during the past several years at her local Hair Cuttery in Virginia Beach, Virginia. She paid approximately $20.00 for the four-ounce sized products.

98.      Plaintiff Hamilton sought to purchase hair repair products to repair hair damage caused by coloring her hair.

99.      Plaintiff Hamilton purchased the Miracle Repair Leave-In Products based on her belief that the products were capable of repairing her damaged hair.

100.      Plaintiff Hamilton looked at the Miracle Repair Leave-In Products' labels prior to her purchase of the products and saw It's A 10's promise that the products she purchased would repair hair.

101.      Plaintiff Hamilton was specifically drawn to the Miracle Repair Leave-In Products based on the products' name—Miracle Repair Leave-In®—which were conspicuously displayed on the front labels of the Miracle Repair Leave-In Products Plaintiff Hamilton purchased.

102.      Plaintiff Hamilton reasonably understood It's A 10's express label claims to mean that the Miracle Repair Leave-In Products would actually repair her hair.

103.      Plaintiff Hamilton relied on It's A 10's express claims about the purported nature of the Miracle Repair Leave-In Products and the products' hair repair benefits, *i.e.*, that the products would actually repair her damaged hair, when she purchased the products.

104.      Because the Miracle Repair Leave-In Products did not in fact repair hair, they were worth less to Plaintiff Hamilton than what she paid. Plaintiff Hamilton was willing to purchase the

products and pay the price she did because, based on It's A 10's express representations that the Miracle Repair Leave-In Products would repair her hair, she reasonably expected that the Miracle Repair Leave-In Products would provide the promised hair repair benefits.

105.    Plaintiff Hamilton, therefore, suffered an actual economic injury when she purchased the Miracle Repair Leave-In Products that did not conform with Defendant's express promises.

106.    If Plaintiff Hamilton had been aware of the true nature of the Miracle Repair Leave-In Products, and their inability to provide the promised benefits, *i.e.*, repair hair damage, she would not have purchased them on the same terms. Plaintiff Hamilton paid more for the Miracle Repair Leave-In Products than she would have otherwise as a result of It's A 10's false claims that the Miracle Repair Leave-In Products would repair her hair because she would not have purchased the products or would have paid significantly less for them if she knew that the products would not repair her hair.

107.    As a result of Miracle Repair Leave-In Products' inability to provide the hair repair benefits promised by It's A 10, Plaintiff Hamilton did not receive the benefit of her bargain.

108.    Plaintiff Hamilton would like to purchase It's A 10's products in the future if they conform with It's A 10's representations about the products and perform as promised. However, Plaintiff Hamilton is currently unable to rely on It's A 10's representations regarding its products in deciding whether to purchase It's A 10's products in the future.

109.    As a direct and proximate result of It's A 10's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Hamilton has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of

and/or overpayment for the Miracle Repair Leave-In Products, in addition to the loss of the benefit of her bargain and the products' intended benefits.

*Plaintiff Deborah Manning*

110.    Plaintiff Deborah Manning purchased It's A 10 Miracle Repair Products, including Potion 10 Miracle Repair Leave-In® ("Miracle Repair Leave-In Products"). She purchased the Miracle Repair Leave-In Product numerous times during the past five years. She paid approximately $20.00 for the four-ounce sized products.

111.    Plaintiff Manning sought to purchase hair repair products to repair hair damage caused by highlighting her hair.

112.    Plaintiff Manning purchased the Miracle Repair Leave-In Products based on her belief that the products were capable of repairing her damaged hair.

113.    Plaintiff Manning looked at the Miracle Repair Leave-In Products' labels prior to her purchase of the products and saw It's A 10's promise that the products she purchased would repair hair.

114.    Plaintiff Manning was specifically drawn to the Miracle Repair Leave-In Products based on the products' name—Miracle Repair Leave-In®—which was conspicuously displayed on the front labels of the Miracle Repair Leave-In Products Plaintiff Manning purchased.

115.    Plaintiff Manning reasonably understood It's A 10's express label claims to mean that the Miracle Repair Leave-In Products would actually repair her hair.

116.    Plaintiff Manning relied on It's A 10's express claims about the purported nature of the Miracle Repair Leave-In Products and the products' hair repair benefits, *i.e.*, that the products would actually repair her damaged hair, when she purchased the products.

CLASS ACTION COMPLAINT

117.     Because the Miracle Repair Leave-In Products did not in fact repair hair, they were worth less to Plaintiff Manning than what she paid. Plaintiff Manning was willing to purchase the products and pay the price she did because, based on It's A 10's express representations that the Miracle Repair Leave-In Products would repair her hair, she reasonably expected that the Miracle Repair Leave-In Products would provide the promised hair repair benefits.

118.     Plaintiff Manning, therefore, suffered an actual economic injury when she purchased the Miracle Repair Leave-In Products that did not conform with Defendant's express promises.

119.     If Plaintiff Manning had been aware of the true nature of the Miracle Repair Leave-In Products, and their inability to provide the promised benefits, *i.e.*, repair hair damage, she would not have purchased them on the same terms. Plaintiff Manning paid more for the Miracle Repair Leave-In Products than she would have otherwise as a result of It's A 10's false claims that the Miracle Repair Leave-In Products would repair her hair because she would not have purchased the products or would have paid significantly less for them if she knew that the products would not repair her hair.

120.     As a result of Miracle Repair Leave-In Products' inability to provide the hair repair benefits promised by It's A 10, Plaintiff Manning did not receive the benefit of her bargain.

121.     Plaintiff Manning would like to purchase It's A 10's products in the future if they conform with It's A 10's representations about the products and perform as promised. However, Plaintiff Manning is currently unable to rely on It's A 10's representations regarding its products in deciding whether to purchase It's A 10's products in the future.

122.     As a direct and proximate result of It's A 10's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Manning has incurred

economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Miracle Repair Leave-In Products, in addition to the loss of the benefit of her bargain and the products' intended benefits.

*Plaintiff Elizabeth Nelson*

123.    Plaintiff Elizabeth Nelson purchased It's A 10 Miracle Repair Products, including Potion 10 Miracle Repair Leave-In® in both the four-ounce and two-ounce sizes (collectively, "Repair Leave-In Products") approximately one year ago online through Amazon. She paid approximately $20.00 for the four-ounce bottle and approximately $15.00 for the two-ounce bottle.

124.    Plaintiff Nelson sought to purchase hair repair products to repair damage caused by use of a flatiron.

125.    Plaintiff Nelson purchased the Repair Leave-In Products based on her belief that the products were capable of repairing her damaged hair.

126.    Plaintiff Nelson looked at the Repair Leave-In Products' labels prior to her purchase of the products and saw It's A 10's promise that the products she purchased would repair hair.

127.    Plaintiff Nelson was specifically drawn to the Repair Leave-In Products based on the products' names—Miracle Repair Leave-In Light® and Miracle Repair Leave-In®—which were conspicuously displayed on the front labels of the Repair Leave-In Products Plaintiff Nelson purchased.

128.    Plaintiff Nelson reasonably understood It's A 10's express label claims to mean that the Repair Leave-In Products would actually repair her hair.

129.    Plaintiff Nelson relied on It's A 10's express claims about the purported nature of the Repair Leave-In Products and the products' hair repair benefits, *i.e.*, that the products would actually repair her damaged hair, when she purchased the products.

130.    Because the Repair Leave-In Products do not in fact repair hair, they were worth less to Plaintiff Nelson than what she paid. Plaintiff Nelson was willing to purchase the products and pay the price she did because, based on It's A 10's express representations that the Repair Leave-In Products would repair her hair, she reasonably expected that the Repair Leave-In Products would provide the promised hair repair benefits.

131.    Plaintiff Nelson, therefore, suffered an actual economic injury when she purchased the Repair Leave-In Products that did not conform with Defendant's express promises.

132.    If Plaintiff Nelson had been aware of the true nature of the Repair Leave-In Products, and their inability to provide the promised benefits, *i.e.*, repair hair damage, she would not have purchased them on the same terms. Plaintiff Nelson paid more for the Repair Leave-In Products than she would have otherwise as a result of It's A 10's false claims that the Repair Leave-In Products would repair her hair because she would not have purchased the products or would have paid significantly less for them if she knew that the products would not repair her hair.

133.    As a result of Repair Leave-In Products' inability to provide the hair repair benefits promised by It's A 10, Plaintiff Nelson did not receive the benefit of her bargain.

134.    Plaintiff Nelson would like to purchase It's A 10's products in the future if they conform with It's A 10's representations about the products and perform as promised. However, Plaintiff Nelson is currently unable to rely on It's A 10's representations regarding its products in deciding whether to purchase It's A 10's products in the future.

CLASS ACTION COMPLAINT

135.    As a direct and proximate result of It's A 10's acts, including its affirmative misrepresentations, false statements and material omissions, Plaintiff Nelson has incurred economic injuries including financial damages at the point-of-sale stemming from her purchase of and/or overpayment for the Repair Leave-In Products, in addition to the loss of the benefit of her bargain and the products' intended benefits.

## V. TOLLING AND ESTOPPEL OF
## STATUTE OF LIMITATIONS AND DISCOVERY

### A.    Fraudulent Concealment

136.    All applicable statutes of limitation have been tolled by Defendant's knowing, active, and ongoing fraudulent concealment and denial of the facts alleged herein at all times relevant to this action.

137.    At all times, Defendant knew that the Miracle Repair Products were not, in fact, capable of repairing hair.

138.    Despite knowing the truth about the ingredients, nature, and/or capabilities or inabilities of the Miracle Repair Products, Defendant misrepresented and concealed the true nature of the Products from Plaintiffs and proposed Class Members. Defendant did not adequately represent or otherwise disclose that the Miracle Repair Products do not and cannot repair damaged hair. Any applicable statutes of limitation have, therefore, been tolled by Defendant's knowledge, active misrepresentations, concealment, and denial of the facts alleged herein, which is ongoing behavior by Defendant.

### B.    Discovery Rule

139.    Plaintiffs and proposed Class Members did not immediately discover—and could not have discovered through the exercise of reasonable diligence—the full and complete nature of

the false statements, misrepresentations and/or omissions on Defendant's packaging, marketing, and advertising regarding the Miracle Repair Products' inability to repair hair.

140.     Within the period of any applicable statutes of limitations, Plaintiffs and proposed Class Members could not have discovered, through the exercise of reasonable diligence, that Defendant was—and still is—concealing the Miracle Repair Products' inability to repair hair.

141.     Any applicable statutes of limitation have, therefore, been tolled by operation of the discovery rule.

**C.     Estoppel**

142.     Defendant was under a continuous duty to disclose to Plaintiffs and proposed Class Members the true character, nature, abilities, and benefits of the Miracle Repair Products.

143.     Defendant actively concealed the Miracle Repair Products' true character, nature, abilities, and benefits and knowingly misrepresented—or omitted—facts about the Miracle Repair Products' abilities—a material fact to consumers.

144.     Plaintiffs and proposed Class Members reasonably relied on Defendant's false statements, misrepresentations and/or active concealment of these material facts.

145.     Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this action.

**VI. FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS**

146.     Although Defendant is in the best position to know: (a) what content it placed on the Miracle Repair Products' labels and other marketing materials; (b) Defendant's knowledge regarding the Miracle Repair Products' inability to repair hair; and (c) Defendant's failure to disclose the true nature and benefits of the Miracle Repair Products to consumers, to the extent

necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

147.    **WHO**: Defendant made false statements, misrepresentations and/or omissions of material fact through the Miracle Repair Products' name—Miracle Repair®—which it reiterated and bolstered in its other marketing of the Products, which uniformly include express statements that the Products repair hair, despite the Miracle Repair Products' inability to do so.

148.    **WHAT**: Defendant's uniform and pervasive deceptive and fraudulent labeling, advertising and marketing of the Miracle Repair Products begins with the Product collection's name—Miracle Repair®. It's A 10 reinforces its promise on the Products' labels through its other marketing of the Products when, in fact, the Products do not repair at all, let alone "miracle repair." Accordingly, Defendant's conduct was, and continues to be, misleading and fraudulent because it omitted and concealed that the Miracle Repair Products are not capable of repairing hair, despite falsely and/or misleadingly promising Plaintiffs and proposed Class Members that the Products can in fact repair hair. Defendant's conduct is likely to mislead reasonable consumers, and did mislead Plaintiffs and proposed Class Members, into believing that the Miracle Repair Products could repair their hair. Defendant knows, or should know, this information is material to reasonable consumers, including Plaintiffs and proposed Class Members, in making their purchasing decisions, yet it continued to pervasively market the Miracle Repair Products as providing benefits the Products could not actually provide.

149.    **WHEN**: Defendant made misrepresentations, false statements and/or omissions of material facts during the applicable Class periods and at the time Plaintiffs and Class Members purchased the Miracle Repair Products. Defendant's misrepresentations, false statements and/or material omissions are ongoing.

150.    **WHERE**: Defendant's marketing message was uniform and pervasive, carried through false statements, misrepresentations, and/or omissions of material facts, including prominently featuring "Miracle Repair®" Products' names on the label. Defendant reinforced and reiterated these labels' hair repair claims in its other marketing of the Products.

151.    **HOW**: Defendant made false statements, misrepresentations and/or failed to disclose material facts regarding the Miracle Repair Products by representing the Products could repair consumers' damaged hair and concealing the fact that the Products' ingredient formulation is incapable of repairing hair damage.

152.    **WHY**: Defendant made the false statements, misrepresentations, and/or material omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendant profited by selling the Miracle Repair Products to many thousands of consumers.

153.    **INJURY**: Plaintiffs and proposed Class Members suffered economic injury at the point of sale because the Products were worth less than what they paid for. Plaintiffs and proposed Class Members would not have purchased or overpaid for the Products, but for Defendant's false statements, misrepresentations, and/or omissions of material facts. The Products Plaintiffs and proposed Class Members purchased and used did not conform to Defendant's promises and warranties and as a result, Plaintiffs and proposed Class Members were deprived the benefit of their bargain.

## VII. CLASS ACTION ALLEGATIONS

154.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

155.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1)-(3), on behalf of themselves and members of the following proposed multi-state class ("Multi-State Consumer Protection Class"):

> **During the fullest period allowed by law, all persons residing in the states of Massachusetts, Illinois, Virginia, Washington, and Wisconsin and in any state with similar consumer protection laws[22] who purchased the Products for personal use, until the date notice is disseminated.**

156.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following proposed multi-state class ("Multi-State Breach of Express Warranty Class"):

> **During the fullest period allowed by law, all persons residing in the states of Massachusetts, Illinois, Virginia, and Washington, and in any state with similar express warranty laws,[23] who purchased the Products for personal use, until the date notice is disseminated.**

---

[22] While discovery may alter the following, Plaintiffs assert that the other states with similar consumer fraud laws under the facts of this case may include but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. §§ 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq.*); Delaware (Del. Code tit. 6, §§ 2511, *et seq.*); District of Columbia (D.C. Code §§ 28-3901, *et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*); Idaho (Idaho Code §§ 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 §§ 205-A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*); Montana (Mo. Code. §§ 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. §§ 59 1601, *et seq.*); Nevada (Nev. Rev. Stat. §§ 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. §§ 358-A:1, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New Mexico (N.M. Stat. §§ 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); North Dakota (N.D. Cent. Code §§ 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, §§ 751, *et seq.*); Oregon (Or. Rev. Stat. §§ 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws §§ 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code §§ 17.41, *et seq.*); Vermont (Vt. Stat. Tit. 9, §§ 2451, *et seq.*); and West Virginia (W. Va. Code §§ 46A-6- 101, *et seq.*)*See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

[23] While discovery may alter the following, Plaintiffs assert that the other states with similar express warranty laws under the facts of this case include, but are not limited to: Arizona (A.R.S. § 47-2313); California (Cal U Com Code § 2313); Colorado (C.R.S. § 4-2-313); Connecticut (Conn. Gen. Stat. § 42a-2-313); the District of Columbia (D.C. Code § 28:2-313); Florida (Fla. Stat. § 672.313); Georgia (O.C.G.A. § 11-2-313); Louisiana (La. C.C. Art. 2474); Maryland (Md.

157.    Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following proposed multi-state class ("Multi-State Breach of Implied Warranty Class"):

> **During the fullest period allowed by law, all persons residing in the states of Massachusetts, Illinois, Virginia, and Washington, and in any state with similar implied warranty laws,[24] who purchased the Products for personal use, until the date notice is disseminated.**

158.    Plaintiff Nelson brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) - (3), on behalf of herself and the following Illinois Class:

> **During the fullest period allowed by law, all persons residing in the state of Illinois who purchased the Products within the applicable statute of limitations for personal use, until the date notice is disseminated.**

---

Commercial Law Code Ann. § 2-313); Michigan (MCLS § 440.2313); Missouri (§ 440.2313 R.S.Mo.); Minnesota (Minn. Stat. § 336.2-313); New Hampshire (RSA 382-A:2-313); New Jersey (N.J. Stat. § 12-2-313); New Mexico (N.M. Stat. Ann. § 55-2-313); New York (NY CLS UCC § 2-313); Ohio (ORC Ann. 1302.26); Oregon (ORS § 72.3130); Pennsylvania (13 Pa.C.S. § 2313); Rhode Island (R.I. Gen. Laws § 6A-2-313); and Texas (Tex. Bus. & Com. Code § 2.313). *S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 86–87 (D. Mass. 2007).

[24] While discovery may alter the following, Plaintiffs assert that the other states with similar implied warranty laws under the facts of this case include, but are not limited to: Arizona (A.R.S. § 47-2314); California (Cal U Com Code § 2314); Colorado (C.R.S. § 4-2-316); Connecticut (Conn. Gen. Stat. § 42a-2-314); the District of Columbia (D.C. Code § 28:2-314); Florida (Fla. Stat. § 672.314); Georgia (O.C.G.A. § 11-2-314); Louisiana (La. C.C. Art. 2520); Maryland (Md. Commercial Law Code Ann. § 2-314); Michigan (MCLS § 440.2314); Missouri (§ 400.2-314 R.S.Mo.); Minnesota (Minn. Stat. § 336.2-314); New Hampshire (RSA 382-A:2-314); New Jersey (N.J. Stat. § 12A:2-314); New Mexico (N.M. Stat. Ann. § 55-2-314); New York (NY CLS UCC § 2-314); Ohio (ORC Ann. 1302.27); Oregon (ORS § 72.3140); Pennsylvania (13 Pa.C.S. § 2314); Rhode Island (R.I. Gen. Laws § 6A-2-314); Texas (Tex. Bus. & Com. Code § 2.314); and Washington (Rev. Code Wash. (ARCW) § 62A-2-314).

159.     Plaintiff Manning brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) - (3), on behalf of herself and the following Massachusetts Class:

> **During the fullest period allowed by law, all persons residing in the state of Massachusetts who purchased the Products within the applicable statute of limitations for personal use, until the date notice is disseminated.**

160.     Plaintiff Hamilton brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) - (3), on behalf of herself and the following Virginia Class:

> **During the fullest period allowed by law, all persons residing in the state of Virginia who purchased the Products within the applicable statute of limitations for personal use, until the date notice is disseminated.**

161.     Plaintiff Gerard brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) - (3), on behalf of herself and the following Washington Class:

> **During the fullest period allowed by law, all persons residing in the state of Washington who purchased the Products within the applicable statute of limitations for personal use, until the date notice is disseminated.**

162.     Plaintiff Thomas brings this action individually and as a representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) - (3), on behalf of herself and the following Wisconsin Class:

> **During the fullest period allowed by law, all persons residing in the state of Wisconsin who purchased the Products within the applicable statute of limitations for personal use, until the date notice is disseminated.**

163.     Specifically excluded from these definitions are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees,

assigns and successors; (b) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (c) Class Counsel.

164.    The Multi-State Consumer Protection Class, Multi-State Breach of Express Warranty Class, Multi-State Breach of Implied Warranty Class, and the Illinois, Massachusetts, Virginia, Washington, and Wisconsin Classes are referred to collectively throughout the Consolidated Complaint as the Class.

165.    Plaintiffs reserve the right to modify the class definitions, if necessary, to include additional products which have been similarly misrepresented by Defendant as having the ability to repair hair, or if further information and discovery indicate that the Class definitions should be otherwise modified.

166.    All members of the Class were and are similarly affected by the deceptive labeling, reinforced by Defendant's marketing and advertising, of It's A 10's Products, and the relief sought herein is for the benefit of Plaintiffs and members of the Class.

167.    <u>Numerosity</u>: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least tens of thousands of people throughout the country, as well as in the states of Massachusetts, Illinois, Virginia, Washington, and Wisconsin. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Classes are readily identifiable from information and records in the possession of Defendant and its authorized retailers.

168.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Miracle Repair Products that Defendant deceptively

represented as capable of repairing hair. Defendant designed, manufactured, marketed, advertised, distributed, and sold the Products. Plaintiffs, like all Class Members, have been damaged by Defendant's unlawful conduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a Product that cannot do what Defendant promises, which makes the Products not what reasonable consumers were intending to purchase. Furthermore, the factual basis of Defendant's unlawful conduct is common to all Class Members because Defendant has engaged in systematic and deliberate deceptive and fraudulent behavior, and results in the same injury to all Class Members.

169.     <u>Commonality</u>: Common questions of law and fact exist as to all Members of the proposed Classes. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Classes. Such common legal or factual questions include, *inter alia*:

a.   Whether the Miracle Repair Products are actually capable of repairing damaged hair;

b.   Whether Defendant's practices in labeling, advertising and marketing the Miracle Repair Products tend to mislead reasonable consumers into believing that the Miracle Repair Products can repair damaged hair;

c.   Whether Defendant omitted or failed to disclose material information to Plaintiffs and proposed Class Members regarding the Miracle Repair Products;

d.   Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling, advertising and/or marketing Miracle Repair Products that do not repair damaged hair;

e.   Whether Defendant engaged in false or misleading marketing or advertising by selling and/or marketing the Miracle Repair Products;

f.   Whether Defendant breached the implied warranty of merchantability relating to the Miracle Repair Products;

g.   Whether Defendant breached express warranties relating to the Miracle Repair Products;

h.  Whether Defendant negligently labeled, marketed and/or advertised the Miracle Repair Products;

i.  Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class Members in connection with the sale, advertising, and/or marketing of the Miracle Repair Products;

j.  Whether Plaintiffs and proposed Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

k.  Whether Plaintiffs and proposed Class Members either paid a premium for the Miracle Repair Products that they would not have paid but for the deceptive labeling, advertising and/or marketing of the Miracle Repair Products or would not have purchased the Products at all;

l.  Whether Plaintiffs and proposed Class Members have suffered an economic injury and the proper measure of their losses as a result of those injuries; and

m.  Whether Plaintiffs and proposed Class Members are entitled to injunctive, declaratory, or other equitable relief.

170.  <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of the proposed Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer product, misrepresentation, and mislabeling class actions, and Plaintiffs intend to prosecute this action vigorously.

171.  <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to, or allow its resellers to, advertise, market, promote, and sell the Miracle Repair Products in an unlawful and misleading manner, as described throughout this Complaint, and proposed Class Members will continue to be misled, economically injured, and denied their rights under the law. Defendant has acted and refused to act on grounds that apply generally to the proposed Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

172.    Plaintiffs have standing to make claims for injunctive relief because they would like to purchase Defendant's Products in the future if the Products conformed with Defendant's representations. Plaintiffs, however, are unable to rely on Defendant's representations regarding the Products in deciding whether to purchase Defendant's Products in the future.

173.    Plaintiffs and proposed Class Members seek injunctive relief requiring Defendant to cease its unfair, deceptive and unlawful conduct, including the following:

(a)    Undertake an immediate public information campaign to inform consumers of the truth about the Miracle Repair Products; and

(b)    Modify the offending "Miracle Repair®" Products' names on the Miracle Repair Products' labels, as well as in any other marketing or advertising of the Products.

174.    Plaintiffs and proposed Class Members also seek a declaration that the Miracle Repair Products cannot repair damaged hair, which was known to Defendant and unknown to consumers at the time Plaintiffs and proposed Class Members purchased the Miracle Repair Products.

175.    Plaintiffs and proposed Class Members have been harmed and will experience irreparable future harm should Defendant's conduct not be enjoined because they will be unable to trust the labeling, marketing, and advertising of the Miracle Repair Products and will have to bear the costs associated therewith if Defendant continues to fail and refuse to provide adequate remuneration to consumers.

176.    If Defendant is allowed to continue making false statements, misrepresentations and/or material omissions regarding the Products' ability to repair damaged hair in connection with the manufacturing, advertising, marketing and selling of the Miracle Repair Products, unless injunctive or declaratory relief is granted, Plaintiffs and proposed Class Members will not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged herein.

CLASS ACTION COMPLAINT

177.   <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's unlawful conduct. Absent a class action, Class Members will continue to incur damages, and Defendant's unlawful conduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

178.   Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

179.   Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes appropriate.

**<u>COUNT 1</u>**
***Violation of State Consumer Protection Statutes***
**(On Behalf of Plaintiffs and the Multi-State Consumer Protection Class)**

180.   Plaintiffs, individually and on behalf of the Multi-State Consumer Protection Class, bring this cause of action and hereby adopt and incorporate by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

181.    Plaintiffs and Multi-State Consumer Protection Class Members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above in paragraph 155 and footnote 22, which also provide a basis for redress to Plaintiffs and Multi-State Consumer Protection Class Members based on Defendant's deceptive conduct in making the misleading representations described in this Complaint.

182.    Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

183.    Defendant's prominent and express labeling of the Products as "Potion 10 Miracle Repair®" is materially misleading and violates the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by representing that the Miracle Repair Products could repair consumers' hair when in reality, the Products are incapable of providing the promised hair repair.

184.    Defendant's knowing misrepresentations about the uses, benefits, characteristics, standard and/or quality of its Products are material. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchase decisions.

185.    Defendant's misrepresentations were material to Plaintiffs' and Multi-State Consumer Protection Class Members' decision to purchase the Products or pay a premium for the Products.

186.    Defendant willfully, wantonly, and with reckless disregard for the truth misleadingly label the Products with the "Potion 10 Miracle Repair®" name.

187.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class Members

purchased and paid for Products that did not conform to Defendant's Product promotion, marketing, advertising, and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

188.    As a result of Defendant's violations, Defendant has been unjustly enriched.

189.    Pursuant to the aforementioned States' unfair and deceptive practices laws, Plaintiffs and Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees, costs of suit, and injunctive, declaratory or other equitable relief as deemed appropriate or permitted pursuant to the relevant law.

<u>**COUNT 2**</u>
***Breach of Express Warranty***
**(Plaintiffs, Individually and on Behalf of the Multi-State Breach of Express Warranty Class, or alternatively Plaintiffs, Individually and on Behalf of their Respective State Classes)**

190.    Plaintiffs, individually and on behalf of the Multi-State Breach of Express Warranty Class, or alternatively Plaintiffs, individually and on behalf of their Respective State Classes, hereby re-allege and incorporate all allegations contained in Paragraphs 1-179 as if fully set forth herein.

191.    Defendant is a "merchant" as defined by U.C.C. § 2-104, and related state U.C.C. provisions for the states listed above in paragraph 156 and footnote 23.

192.    Defendant is a "seller" as defined by U.C.C. § 2-103(1)(d), and related state U.C.C. provisions for the states listed above in paragraph 156 and footnote 23.

193.    The Products are "goods" as defined by U.C.C. § 2-105(1), and related state U.C.C. provisions for the states listed above in paragraph 156 and footnote 23.

194.    In connection with its sale of the Products, Defendant, as designer, manufacturer, marketer, distributor or seller of the Products, expressly and intentionally warranted to Plaintiffs and Class Members, that the Miracle Repair Products would repair hair by making promises and affirmations of fact that the Products could repair hair and through its descriptions of the Products as being capable of repairing and/or restoring damaged hair, including prominently labeling and marketing the Products with the "Miracle Repair®" collection name and the Hair Repair Representations. These promises, affirmations of fact, and product descriptions were part of the basis of the bargain between Defendant and consumers, including Plaintiffs and Class Members.

195.    Defendant's warranty representations consist of the prominent promotion of "Miracle Repair®" name and the Hair Repair Representations on the front of the Products' labels. Defendant made these warranty representations to convince consumers that its Products would repair and/or restore damaged hair.

196.    The express written warranties covering the Products were a material part of the bargain between Defendant and consumers, including Plaintiffs and Class Members. At the time these express warranties were made through the Products' labeling, Defendant knew reasonable consumers were purchasing the Products because they believed Defendant's promises and Product descriptions that represented the Miracle Repair Products would actually repair damaged hair.

197.    When purchasing the Products, Plaintiffs and Class Members relied on Defendant's express warranties described above.

198.    Defendant's express warranties were part of the basis for the benefit of the bargain between Defendant and Plaintiffs, as well as Defendant and Class Members.

CLASS ACTION COMPLAINT

199.    Defendant breached its express warranties by selling Products that did not contain an ingredient formulation that would repair hair and were therefore incapable of repairing or restoring damaged hair as promised by and described in Defendant's labeling of the Products.

200.    The Products' inability to repair hair was known to Defendant and unknown to consumers at the time of sale.

201.    Defendant further breached its express written warranties to Plaintiffs and Class Members, in that the Products cannot repair damaged hair, as promised and described in Defendant's labeling of the Products, at the time the Products leave the manufacturing plant and on the first day of purchase.

202.    Additionally, Defendant breached its express written warranties by failing to disclose and actively concealing the true benefits (or lack thereof) of the Miracle Repair Products from consumers, including Plaintiffs and Class Members.

203.    The Miracle Repair Products that Plaintiffs and Class Members purchased do not and cannot repair damaged hair, and thus they suffered the loss of the Products, loss of use of the Products, and loss of the benefit of their bargain.

204.    Defendant's warranty expressly applies to the original purchaser, creating privity between Defendant on the one hand, and Plaintiffs and Class Members on the other.

205.    Likewise, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Products and warranties, creating privity or an exception to any privity requirement. Plaintiffs and each of the Class Members are the intended beneficiaries of Defendant's Products and associated warranties. The retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided by

Defendant. Defendant's warranties were designed for and intended to benefit the consumer only. Therefore, Plaintiffs and Class Members were intended beneficiaries of the Products.

206.    Moreover, each of the Miracle Repair Products have an identical or substantially identical product representation(s), as they each contain "Miracle Repair®" collection name, and one or more of the Hair Repair Representations. Furthermore, the Miracle Repair Products are marketed and advertised in an identical or substantially identical way, creating an exception to any privity requirement.

207.    **Illinois:** Plaintiff Nelson brings this cause of action individually and on behalf of the Illinois Class, pursuant to 810 Ill. Comp. Stat. Ann. 5/2-313. The Products are "goods" as defined by 810 Ill. Comp. Stat. Ann. 5/2-105(1). Defendant is a "seller" as defined by 810 Ill. Comp. Stat. Ann. 5/2-103(1)(d). Plaintiff Nelson and Illinois Class Members are each a "buyer" as defined by 810 Ill. Comp. Stat. Ann. 5/2-103(1)(a).

208.    **Massachusetts:** Plaintiff Manning brings this cause of action individually and on behalf of the Massachusetts Class, pursuant to MA ST 106 § 313. Defendant is a "merchant" as defined by MA ST 106 § 2-104(1). The Products are "goods" as defined by MA ST 106 § 2-105(1). Defendant is a "seller" as defined by MA ST § 106.2-103(1)(d).

209.    **Virginia:** Plaintiff Hamilton brings this cause of action individually and on behalf of the Virginia Class, pursuant to Virginia's Express Warranty Law. Defendant is a "seller" as defined by Va. Code § 8.2-103(1)(d). The Products are "goods" as defined by Va. Code § 8.2-105(1). Plaintiff Hamilton and Virginia Class Members are each a "buyer" as defined by Va. Code § 8.2-103(1)(a).

210.    **Washington:** Plaintiff Hamilton brings this cause of action individually and on behalf of the Washington Class, pursuant to Wash. Rev. Code Ann. § 62A.2-313. Defendant is a

"merchant" as defined by Wash. Rev. Code Ann. § 62A.2-104. Defendant is a "seller" as defined by Wash. Rev. Code Ann. § 62A.2-103(1)(d). The Products are "goods" as defined by Wash. Rev. Code Ann. § 62A.2-105.

211.    On May 23, 2022, Plaintiff Thomas sent a detailed notice and demand for corrective action on behalf of herself and all others similarly situated. Defendant failed to respond.

212.    On January 19, 2023, Plaintiffs Gerard, Hamilton, Manning, and Nelson sent a detailed notice and demand for corrective action on behalf of themselves, and all others similarly situated, via USPS Certified Mail to Defendant. The notice and demand specifically notified Defendant of Plaintiffs' claim for breach of express warranties on behalf of the Multi-State Class.

213.    As a direct and proximate result of Defendant's breach of the above-described express warranties, Plaintiffs and Class Members, did not receive the benefit of their bargain and suffered, and consumers continue to suffer, economic injuries including financial damages at the point-of-sale stemming from their overpayment for the Miracle Repair Products, the loss of value of the Products, and the loss of the Products' intended benefits.

214.    Plaintiffs and Class Members are entitled to all compensatory damages, as well as costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT 3
### Breach of Implied Warranty
**(Plaintiffs, Individually and on Behalf of the Multi-State Breach of Implied Warranty Class, or alternatively Plaintiffs, Individually and on Behalf of their Respective State Classes)**

215.    Plaintiffs, individually and on behalf of the Multi-State Breach of Implied Warranty Class, or alternatively Plaintiffs, individually and on behalf of their Respective State Classes, hereby re-allege and incorporate all allegations contained in Paragraphs 1-179 as if fully set forth herein.

216.    At the time Plaintiffs and Multi-State Breach of Implied Warranty Class Members purchased Defendant's Products, Defendant was involved in the manufacturing, distributing, warranting, and/or selling of haircare products, which include the Miracle Repair Products.

217.    At all times, the Products had an ingredient formulation that was incapable of repairing hair, including when they left the Defendant's control.

218.    Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

219.    In connection with its sale of the Miracle Repair Products, Defendant impliedly warranted to Plaintiffs, as well as Multi-State Breach of Implied Warranty Class Members, that the Products were of merchantable quality.

220.    The implied warranty of merchantability included with the sale of each of the Products means that Defendant warranted that its Products would: (a) conform to the promises and affirmations of fact on the Miracle Repair Products' labels; (b) be fit for the ordinary purposes for which Miracle Repair Products are used; and (c) pass without objection in trade pursuant to the Products' description as a product capable of repairing damaged hair.

221.    When purchasing the Products, Plaintiffs and Multi-State Breach of Implied Warranty Class Members relied on these warranties from Defendant and reasonably expected that the Products would repair their hair.

222.    Moreover, these warranties were part of the basis of the bargain between Defendant and consumers, including Plaintiffs, and Multi-State Breach of Implied Warranty Class Members.

223.    Defendant breached the implied warranty of merchantability because the Products were designed, formulated, manufactured and sold with an ingredient formulation that could not

repair hair and, therefore, are incapable of functioning as a hair repair product, which at all relevant times was known to Defendant and unknown to consumers.

224.    Defendant was under a duty to Plaintiffs and Multi-State Breach of Implied Warranty Class Members not to misrepresent the nature of the Miracle Repair Products and to disclose the true nature of the Products because, *inter alia*:

>    (a)    Defendant was in a superior position to know the true state of facts about the Products' ability to repair hair and the Products' ingredient formulation; and

>    (b)    Plaintiffs and Multi-State Breach of Implied Warranty Class Members could not reasonably have been expected to learn or discover that Products were incapable of repairing hair, in contradiction to Defendant's representations, at the time of purchase (and before the economic injury was incurred).

225.    As further alleged herein, the only way to repair damaged hair is to cut off the damaged portion and allow new growth to replace it, or to a lesser extent, with expensive treatments that must be administered by a trained professional under highly controlled conditions in a salon setting.

226.    Plaintiffs and Multi-State Breach of Implied Warranty Class Members purchased and used the Miracle Repair Products to repair hair damage, which was an intended and foreseeable use of the Products.

227.    The aforementioned problems associated with the Miracle Repair Products render the Products incapable of repairing damaged hair and, therefore, constitute a breach of the implied warranty of merchantability. Specifically, the Products: (a) do not conform to the hair repair promises and affirmations of fact made by Defendant on the Products' labels; (b) are not capable of repairing hair and are therefore unfit for the ordinary purposes of a hair repair product; and (c) do not pass without objection in trade pursuant to Defendant's description of the Miracle Repair

Products, as a significant segment of the buying public would object to buying a Hair Repair Product that does not actually repair hair.

228.    Defendant's warranty applies to Plaintiffs and Multi-State Breach of Implied Warranty Class Members because they had a direct relationship with Defendant's retailers and direct dealings with Defendants via its advertisements, which include the Products labels, creating a third-party beneficiary exception to any privity requirement.

229.    Plaintiffs and Multi-State Breach of Implied Warranty Class Members are the intended beneficiaries of Defendant's Products and associated warranties. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only. Therefore, Plaintiffs, as well as Multi-State Breach of Implied Warranty Class Members, were the intended beneficiaries.

230.    More specifically, Defendant's intention that its warranties apply to Plaintiffs, as well as Multi-State Breach of Implied Warranty Class Members, as third-party beneficiaries is evident from the statements contained on the Products' labels and in Defendant's marketing and advertising statements about the Products. Likewise, it was reasonably foreseeable that Plaintiffs and Multi-State Breach of Implied Warranty Class Members would be the intended beneficiaries of the Products and warranties.

231.    **Illinois:** Plaintiff Nelson brings this cause of action individually and on behalf of the Illinois Class, pursuant to 810 Ill. Comp. Stat. Ann. 5/2-314. Defendant is a "merchant" as defined by 810 Ill. Comp. Stat. Ann. 5/2-104(1). The Products are "goods" as defined by 810 Ill. Comp. Stat. Ann. 5/2-105(1). Defendant is a "seller" as defined by 810 Ill. Comp. Stat. Ann. 5/2-103(1)(d).

232.    **Massachusetts:** Plaintiff Manning brings this cause of action individually and on behalf of the Massachusetts Class, pursuant to MA ST 106 § 314. Defendant is a "merchant" as defined by MA ST 106 § 2-104(1). The Products are "goods" as defined by MA ST 106 § 2-105(1). Defendant is a "seller" as defined by MA ST § 106.2-103(1)(d).

233.    **Virginia:** Plaintiff Hamilton brings this cause of action individually and on behalf of the Virginia Class, pursuant to Virginia's Implied Warranty Law, Va. Code § 8.2-314. Defendant is a "merchant" as defined by Va. Code § 8.2-104(1). Defendant is a "seller" as defined by Va. Code § 8.2-103(1)(d). The Products are "goods" as defined by Va. Code § 8.2-105(1).

234.    **Washington:** Plaintiff Hamilton brings this cause of action individually and on behalf of the Washington Class, pursuant to Wash. Rev. Code Ann. § 62A.2-314. Defendant is a "merchant" as defined by Wash. Rev. Code Ann. § 62A.2-104. Defendant is a "seller" as defined by Wash. Rev. Code Ann. § 62A.2-103(1)(d). The Products are "goods" as defined by Wash. Rev. Code Ann. § 62A.2-105.

235.    On January 19, 2023, Plaintiffs Gerard, Hamilton, Manning and Nelson sent a detailed notice and demand for corrective action on behalf of themselves, and all others similarly situated, via USPS Certified Mail to Defendant. The notice and demand specifically notified Defendant of Plaintiffs' claim for breach of implied warranties.

236.    As a direct and proximate result of the foregoing, Plaintiffs and Multi-State Breach of Implied Warranty Class Members did not receive the benefit of their bargain and suffered, and consumers continue to suffer, economic injuries including financial damages at the point-of-sale stemming from their overpayment for the Miracle Repair Products, the loss of value of the Products, and the loss of the Products' intended benefits.

237. Plaintiffs, as well as Multi-State Breach of Implied Warranty Class Members, are entitled to all compensatory damages, as well as costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT 4**
***Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act,***
***§§ 815 Ill. Comp. Stat. 505/01, et seq.***
**(On Behalf of Plaintiff Nelson and the Illinois Class)**

238. Plaintiff Nelson, individually and on behalf of the Illinois Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

239. Defendant, Plaintiff Nelson, and Illinois Class Members are each a "person" as defined by 815 ILCS § 505/1(1)(a).

240. Defendant's advertising, offering for sale, and sale of the Miracle Repair Products are "trade" and commerce" pursuant to 815 ILCS § 505/1(1)(f).

241. Defendant's marketing, advertising and sale of the Products are deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which prohibits deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, or the use of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act. 815 ILCS §505/2.

242. Defendant's marketing and advertising of the Miracle Repair Products included misleading and/or false claims that the Products are able to repair hair, when, in reality, the Miracle Repair Products incapable of repairing damaged hair.

243.    In making these false or misleading claims, Defendant also failed to disclose the true nature of the Miracle Repair Products to consumers, including Plaintiff Nelson and Illinois Class Members.

244.    Indeed, Defendant knowingly and intentionally concealed and/or omitted material facts when it made claims that the Products were capable of repairing hair.

245.    Defendant had exclusive knowledge of material facts concerning the Miracle Repair Products' ingredient formulation and that the Products are not suitable for their intended use, i.e., hair repair. Defendant, however, affirmatively misrepresented that the Miracle Repair Products would repair hair.

246.    Defendant's deceptive acts or practices occurred repeatedly in Defendant's course of trade or business in Illinois, including its marketing, advertising and sale of the Products in Illinois and were made for the purpose of convincing consumers to purchase its Products, including Illinois consumers.

247.    Defendant knew for years before Plaintiff Nelson and Illinois Class Members purchased the Miracle Repair Products that the Products' ingredient formulation is incapable of repairing hair and were therefore, not suitable for their intended use.

248.    Defendant, however, intentionally misrepresented the nature and characteristics of its Miracle Repair Products to induce consumers to purchase the Products in reliance of these claims.

249.    Defendant was under a duty to Plaintiff Nelson and the Illinois Class not to misrepresent the nature of the Miracle Repair Products and to disclose the true nature of the Products because, *inter alia*:

> (a)    Defendant was in a superior position to know the true state of facts about the Products' ingredient formulation; and

(b)     Plaintiff Nelson and the Illinois Class could not reasonably have been expected to learn or discover that the Miracle Repair Products were not able to repair hair, in contradiction to Defendant's representations, at the time of purchase (and before damage occurred to Plaintiff Nelson and the Illinois Class).

250.    Defendant's misrepresentations, including its false statements, misleading claims, and/or material omissions, about the Miracle Repair Products ability to repair hair are likely to or have the capacity to deceive consumers – and did in fact deceive Plaintiff Nelson and Illinois Class Members.

251.    Consumers' belief, including the belief of Plaintiff Nelson and Illinois Class Members, that the Products are capable of repairing hair is reasonable because that is exactly the message Defendant intended to convey.

252.    Defendant's misrepresentations about the nature and characteristics of its Miracle Repair Products are material. A reasonable consumer considers the misleading, false and/or concealed facts about the Products' ability to repair hair important in deciding whether to purchase the Products.

253.    Moreover, Defendant is aware that a product's ability to repair hair is important to consumers, which is why it pervasively and expressly marketed its Products as a hair repair product.

254.    Had Plaintiff Nelson and Illinois Class Members known that the Products were incapable of repairing hair, they would not have purchased the Products, or would have paid less for them.

255.    Defendant's misrepresentations were therefore material to Plaintiff Nelson's and Illinois Class Members' decision to purchase the Products or pay a premium for the Products.

256.    Plaintiff Nelson's and Illinois Class Members' injury-in-fact includes economic harm incurred when they purchased or overpaid for the Products and lost use of the Products that,

by being incapable of repairing hair, did not conform with Defendant's representations that the Products are a "Miracle Repair" hair product.

257.    As a direct and proximate result of Defendant's misrepresentations about the Miracle Repair Products, Plaintiff Nelson and Illinois Class Members have been harmed and suffered actual financial damages.

258.    Accordingly, Defendant's misrepresentations about the Miracle Repair Products described herein are deceptive practices in violation of the ICFA.

259.    Additionally, Defendant's acts and practices are deceptive in violation of the ICFA based on Defendant's violations of Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS §505/2, as set forth in Paragraphs 217-238.

260.    Defendant's conduct in violation of the ICFA presents a continuing risk and likelihood of future harm to Plaintiff Nelson, Illinois Class Members, and the general public, as it continues to make representations that the Products are capable of repairing hair. Defendant's unlawful acts and practices complained of herein affect the public interest.

261.    Plaintiff Nelson, individually and on behalf of the Illinois Class, seeks an order enjoining Defendant's unlawful deceptive practices, actual damages, attorneys' fees, costs of suit and any other just and proper relief available under the ICFA and applicable law.

## COUNT 5
### *Violations of the Illinois Uniform Deceptive Trade Practices Act,*
### *§§ 815 ILCS 510/2, et seq.,*
### **(On Behalf of Plaintiff Nelson and the Illinois Class)**

262.    Plaintiff Nelson, individually and on behalf of the Illinois Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

263.     Defendant is a "person" as defined by 815 ILCS § 510/1(5).

264.     Defendant's marketing, advertising and sale of the Products constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), including by engaging in the following acts and practices in the conduct of its business:

     (a)    representing that goods have characteristics, ingredients, uses, or benefits that they do not have, 815 ILCS § 510/2(a)(5);

     (b)    representing that goods are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another, 815 ILCS § 510/2(a)(7); and

     (c)    advertising goods with intent not to sell them as advertised, 815 ILCS § 510/2(a)(9).

265.     By making false statements, misleading claims, and/or material omissions, Defendant misrepresented that the Products are able to repair hair, Defendant engaged in deceptive trade practices in violation of the Illinois UDTPA. More specifically, Defendant's violations include its: representations that the Products had characteristics and benefits that they do not have; claims that the Products were of a particular standard, quality, or grade when they were of another; and intent not to sell the Products as advertised given its knowledge that the Products are incapable of repairing hair.

266.     Defendant's deceptive acts or practices occurred repeatedly in Defendant's course of trade or business in Illinois, including its marketing, advertising and sale of Products in Illinois and were made for the purpose of inducing consumers to purchase its Products, including Illinois consumers.

267.     Defendant's marketing and advertising of the Miracle Repair Products included misleading and/or false claims that the Products are able to repair hair, when, in reality, the Miracle Repair Products are incapable of doing so.

268.     In making these false or misleading claims, Defendant also failed to disclose the true nature of the Products to consumers, including Plaintiff Nelson and the Illinois Class.

269.     Indeed, Defendant knowingly and intentionally concealed and/or omitted material facts when it made claims that the Products are capable of repairing hair.

270.     Defendant had exclusive knowledge of material facts concerning the Products' ingredient formulation and the Miracle Repair Products' inability to repair hair. Defendant, however, affirmatively misrepresented that the Miracle Repair Products could indeed repair hair.

271.     Defendant knew for years before Plaintiff Nelson and the Illinois Class purchased the Miracle Repair Products that the Products were incapable of repairing hair and were therefore not suitable for their intended use. Defendant, however, recklessly, intentionally, and/or wantonly misrepresented the nature and characteristics of its Miracle Repair Products.

272.     Defendant was under a duty to Plaintiff Nelson and the Illinois Class not to misrepresent the nature of the Miracle Repair Products and to disclose the true nature of the Products because, *inter alia*:

    (a)    Defendant was in a superior position to know the true state of facts about the ingredients in its Products; and

    (b)    Plaintiff Nelson and the Illinois Class could not reasonably have been expected to learn or discover that the Miracle Repair Products were not able to repair hair, in contradiction to Defendant's representations, at the time of purchase (and before damage occurred to Plaintiff Nelson and the Illinois Class).

273.     Consumers' belief, including the belief of Plaintiff Nelson and members of the Illinois Class, that the Products are capable of repairing hair is reasonable because that is exactly the message Defendant intended to convey.

274.    Consumers are likely to be misled, and Plaintiff Nelson and the Illinois Class were in fact misled, by Defendant's knowing misrepresentations, including its misleading and/or false statements and omissions.

275.    Defendant's misrepresentations about the nature and characteristics of its Miracle Repair Products are material. A reasonable consumer considers the misleading, false and/or concealed facts important in deciding whether to purchase the Products.

276.    Defendant is aware that a product's ability to repair hair is important to consumers, which is why it pervasively and expressly marketed its Products as having these qualities.

277.    Had Plaintiff Nelson and Illinois Class Members known that the Products were incapable of repairing their hair, they would not have purchased the Products, or would have paid less for them.

278.    Defendant's misrepresentations were therefore material to Plaintiff Nelson's and Illinois Class Members' decision to purchase the Products or pay a premium for the Products.

279.    Plaintiff Nelson's and Illinois Class Members' injury-in-fact includes economic harm incurred when they purchased or overpaid for the Products and lost use of the Products that, by being incapable of repairing hair, did not conform with Defendant's representations that the Products are a "Miracle Repair" hair product.

280.    Accordingly, Defendant's: misrepresentations that the Products had characteristics and benefits that they do not have; false claims that the Products were of a particular standard, quality, or grade when they were of another; and intent not to sell the Products as advertised given its knowledge that the Products do not repair hair are deceptive and constitute violations of Illinois UDTPA.

281.    As a direct and proximate result of Defendant's Illinois UDTPA violations, Plaintiff Nelson and Illinois Class Members have been harmed and will continue to be harmed.

282.    Defendant's conduct in violation of the Illinois UDTPA presents a continuing risk and likelihood of future harm to Plaintiff Nelson, the Illinois Class, and the general public, as it continues to make representations that the Products can repair hair. Defendant's unlawful acts and practices complained of herein affect the public interest.

283.    Plaintiff Nelson, individually and on behalf of the Illinois Class, seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Illinois UDTPA and applicable law.

## **COUNT 6**
*Violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A*
**(On Behalf of Plaintiff Manning and the Massachusetts Class)**

284.    Plaintiff Manning, individually and on behalf of the Massachusetts Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

285.    Defendant, Plaintiff Manning, and Class Members are each a "person" as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1 (a).

286.    Defendant's advertisement, sale, offering for sale and distribution of the Miracle Repair Products constitute "trade" and/or "commerce" pursuant to Mass. Gen. Laws Ann. Ch. 93A, § 1 (b).

287.    The Massachusetts Consumer Protection Act ("MCPA") prohibits deceptive acts or practices by any person in the conduct of any trade or commerce. Mass. Gen. Laws Ann. Ch. 93A, § 2.

288.     An act or practice is a deceptive act or practice in violation of the MCPA if: (a) there is a representation, omission, or other practice likely to mislead consumers; (b) consumers' interpretation of the act or practice is reasonable in light of the circumstances; and (c) the misleading representation, omission, or practice is material.

289.     Defendant's marketing and advertising of the Miracle Repair Products included misleading and/or false claims that the Products can repair hair, when, in reality, the Miracle Repair Products are incapable of doing so.

290.     In making these false or misleading claims, Defendant also failed to disclose to consumers, including Plaintiff Manning and Class Members, the true nature of the Products.

291.     Defendant knew for years before Plaintiff Manning and Class Members purchased the Miracle Repair Products that the Products were incapable of repairing hair. Defendant, however, recklessly, intentionally, and/or wantonly misrepresented the nature and characteristics of its Miracle Repair Products.

292.     Defendant had exclusive knowledge of material facts concerning Miracle Repair Products' inability to repair hair. Defendant, however, affirmatively misrepresented that the Products were capable of "Miracle Repair" and were sustainable as a hair repair product.

293.     Defendant was under a duty to Plaintiff Manning and Class Members not to misrepresent the nature of the Miracle Repair Products and to disclose the true nature of the Products because, *inter alia*:

  (a)     Defendant was in a superior position to know the true state of facts about the ingredients in its Products; and

  (b)     Plaintiff Manning and the Massachusetts Class could not reasonably have been expected to learn or discover that the Miracle Repair Products were not able to repair hair, in contradiction to Defendant's representations, at the time of purchase (and before damage occurred to Plaintiff Manning and the Massachusetts Class).

294.     Consumers' belief, including the belief of Plaintiff and Massachusetts Class Members, that the Products are able to repair hair is reasonable because that is exactly the message Defendant intended to convey.

295.     Consumers are likely to be misled, and Plaintiff Manning and Class Members were in fact misled, by Defendant's knowing misrepresentations, including its misleading and/or false statements and omissions.

296.     Defendant's misrepresentations about the nature and characteristics of its Miracle Repair Products are material. A reasonable consumer considers the misleading, false and/or concealed facts important in deciding whether to purchase the Products.

297.     Consumers, including Plaintiff Manning and Class Members, fairly understand that products represented as "Miracle Repair" products would in fact repair their hair.

298.     Defendant is aware that a product's ability to repair hair is important to consumers, which is why it pervasively and expressly marketed its Products as having these qualities.

299.     Had Plaintiff Manning and Class Members known that the Products were incapable of repairing hair, they would not have purchased the Products, or would have paid less for them.

300.     Defendant's misrepresentations were therefore material to Plaintiff Manning's and Class Members' decision to purchase the Products or pay a premium for the Products.

301.     Accordingly, Defendant's misrepresentations, including its misleading and/or false statements and omissions about the nature and characteristics of its Miracle Repair Products, are deceptive and constitute violations of the MCPA.

302.     As a direct and proximate result of Defendant's MCPA violations, members of the public, including Plaintiff and Class Members, have been harmed and will continue to be harmed. Plaintiff Manning and Class Members have suffered economic injury including financial damages

at the point-of-sale stemming from their overpayment for the Products, the loss of value of the Products, and loss of the Products' intended benefits.

303.    Defendant's MCPA violations present a continuing risk and likelihood of future harm to Plaintiff Manning, Class Members and the general public, as it continues to make some deceptive representations that the Products repair hair when they do not. Defendant's unlawful acts and practices complained of herein affect the public interest.

304.    Plaintiff Manning sent a demand for relief on behalf of herself and the Massachusetts Class pursuant to the MCPA on December 27, 2022 and January 19, 2023.

305.    Plaintiff Manning, individually and on behalf of the Class, seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, actual damages or twenty-five dollars, whichever is greater, or up to three but not less than two times such amount; attorneys' fees; costs of suit; and any other just and proper relief available pursuant to MCPA and applicable law.

**<u>COUNT 7</u>**
***Violations of the Virginia Consumer Protection Act, Virginia Code Ann. §§ 59.1-196, et seq.,***
**(On Behalf of Plaintiff Hamilton and the Virginia Class)**

306.    Plaintiff Hamilton, individually and on behalf of the Virginia Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

307.    The conduct described herein took place in the state of Virginia and constitutes violations of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196, *et seq*. ("VCPA").

308.    Defendant is a "supplier" as defined by Va. Code § 59.1-198.

309.    The VCPA applies to all claims of Plaintiff Hamilton and Virginia Class Members because the conduct which constitutes violations of the VCPA by Defendant occurred within the state of Virginia.

310.     Defendant, Plaintiff Hamilton, and proposed Virginia Class Members are each a "person" as defined by Va. Code § 59.1-198.

311.     Defendant's Miracle Repair Products constitute "goods," as defined by Va. Code § 59.1-198.

312.     Plaintiff Hamilton's and the Virginia Class Members' purchases of Defendant's Miracle Repair Products each constitute a "consumer transaction," as that term is defined by Va. Code § 59.1-198.

313.     Defendant engaged in the following fraudulent acts and practices in their labeling, marketing, advertising and sale of the Miracle Repair Products, which constitute violations of the VCPA:

(a)     misrepresenting that goods have certain quantities, characteristics, ingredients, uses, or benefits, Va. Code § 59.1-200(5);

(b)     misrepresenting that goods are of a particular standard, quality, grade, style, or model, Va. Code § 59.1-200(6); and

(c)     advertising goods with intent not to sell them as advertised, Va. Code § 59.1-200(8).

314.     Defendant's uniform marketing, advertising, and labeling of the Miracle Repair Products contain false claims, misleading statements and/or material omissions about the Products' ability to repair hair.

315.     Defendant's marketing, advertising, and labeling of the Miracle Repair Products expressly and unambiguously promote the Products as capable of repairing hair in order to capitalize on increasing consumer demand for Miracle Repair Products. Defendant's material hair repair claims are made with the sole purpose of persuading these consumers to purchase the Miracle Repair Products.

316. Defendant is well aware that its Miracle Repair Products are incapable of repairing hair. Despite this knowledge, Defendant has intentionally and knowingly marketed, advertised and labeled the Miracle Repair Products as able to do just that and have concealed material facts about the Products' inability to actually repair hair damage.

317. Defendant's deceptive practices, including prominently labeling and marketing of the Products with the misleading "Miracle Repair®" name, is specifically designed with the intent to convince consumers, including Plaintiff Hamilton and Virginia Class Members, to mistakenly believe that the Miracle Repair Products are capable of repairing hair.

318. Consumers, including Plaintiff and Virginia Class Members, relied on Defendant's Hair Repair Representations, to their detriment, when they purchased the Products.

319. As a result of their reliance on Defendant's false statements, misleading representations and/or omissions of material facts, Plaintiff Hamilton and Virginia Class Members were misled and suffered damage, including economic injury.

320. Plaintiff Hamilton and Virginia Class Members seek to recover their actual damages, or five hundred dollars, whichever is greater, as well as reasonable attorneys' fees, costs of suit, and any other relief authorized by VCPA that the Court deems proper.

## COUNT 8
### *Violations of the Washington Consumer Protection Act,*
**Wash. Rev. Code Ann. §§ 19.86.020, *et seq.***
**(On Behalf of Plaintiff Gerard and the Washington Class)**

321. Plaintiff Gerard, individually and on behalf of the Washington Class, brings this cause of action and hereby adopts and incorporates by reference all allegations contained in Paragraphs 1-179 as if fully set forth herein.

322.     The conduct described herein took place in the state of Washington and constitutes violations of the Washington Consumer Protection Act, Wash. Rev. Code Ann §§ 19.86.020, *et seq*. ("WCPA").

323.     The WCPA applies to all claims of Plaintiff Gerard and Washington Class Members because the conduct which constitutes violations of the WCPA by Defendant occurred within the state of Washington.

324.     Defendant is a "person," as defined by Wash. Rev. Code Ann. §19.86.010(1).

325.     Defendant advertised, offered or sold goods in Washington and engaged in trade or commerce as that phrase is defined by Wash. Rev. Code Ann. §19.86.010(2).

326.     An act or practice is a deceptive act or practice in violation of the WCPA if there is a misrepresentation of a material fact that has the capacity to deceive a substantial portion of the population.

327.     Defendant's marketing and advertising of the Miracle Repair Products included misleading and/or false claims that the Products can repair hair, when, in reality, the Miracle Repair Products are incapable of doing so.

328.     In making these false or misleading claims, Defendant also failed to disclose to consumers, including Plaintiff Gerard and Class Members, the true nature of the Products.

329.     Indeed, Defendant knowingly and intentionally concealed and/or omitted material facts when it made claims that the Products are capable of repairing hair.

330.     Defendant knew for years before Plaintiff Gerard and Class Members purchased the Miracle Repair Products that the Products were incapable of repairing hair. Defendant, however, recklessly, intentionally, and/or wantonly misrepresented the nature and characteristics of its Miracle Repair Products.

331.    Defendant had exclusive knowledge of material facts concerning Miracle Repair Products' inability to repair hair. Defendant, however, affirmatively misrepresented that the Products were capable of "Miracle Repair" and were sustainable as a hair repair product.

332.    Defendant was under a duty to Plaintiff Gerard and Class Members not to misrepresent the nature of the Miracle Repair Products and to disclose the true nature of the Products because, *inter alia*:

(a)    Defendant was in a superior position to know the true state of facts about the ingredients in its Products; and

(b)    Plaintiff Gerard and the Washington Class could not reasonably have been expected to learn or discover that the Miracle Repair Products were not able to repair hair, in contradiction to Defendant's representations, at the time of purchase (and before damage occurred to Plaintiff Gerard and the Washington Class).

333.    Consumers' belief, including the belief of Plaintiff and Washington Class Members, that the Products are able to repair hair is reasonable because that is exactly the message Defendant intended to convey.

334.    Defendant's false claims that the Products can repair hair and its failure to disclose the true nature of the Products have the capacity to deceive a substantial portion of the population.

335.    Defendant's misrepresentations about the nature and characteristics of its Miracle Repair Products are material. A reasonable consumer considers the misleading, false and/or concealed facts important in deciding whether to purchase the Products.

336.    Consumers, including Plaintiff Gerard and Class Members, fairly understand that products represented as "Miracle Repair" products would in fact repair their hair.

337.    Defendant is aware that a product's ability to repair hair is important to consumers, which is why it pervasively and expressly marketed its Products as having these qualities.

338.    Had Plaintiff Gerard and Class Members known that the Products were incapable of repairing hair, they would not have purchased the Products, or would have paid less for them.

339.    Defendant's misrepresentations were therefore material to Plaintiff Gerard's and Class Members' decision to purchase the Products or pay a premium for the Products.

340.    Defendant's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020 and violates a statute that contains a specific declaration of public interest impact §§ 19.255.010, *et seq*. Alternatively, Defendant's conduct is injurious to the public interest because it has injured Plaintiff and Washington Class Members, had the capacity to injure person, and has the capacity to injure other persons.

341.    Further, Defendant's WCPA violations affect the public interest and present a continuing risk and likelihood of future harm to Plaintiff Gerard, Class Members and the general public, as it continues to make some representations that the Products are capable of repairing hair. Defendant's unlawful acts and practices complained of herein affect the public interest.

342.    Accordingly, Defendant's misrepresentations, including its misleading and/or false statements and omissions about the nature and characteristics of its Miracle Repair Products, are deceptive and constitute violations of the WCPA.

343.    Defendant intentionally, knowingly, and maliciously engaged in the above-described conduct which constitutes violations of the WCPA.

344.    As a direct and proximate result of Defendant's WCPA violations, members of the public, including Plaintiff and Class Members, have been harmed and will continue to be harmed. Plaintiff Gerard and Class Members have suffered economic injury including financial damages at the point-of-sale stemming from their overpayment for the Products, the loss of value of the Products, and loss of the Products' intended benefits.

345.     Plaintiff Gerard and Washington Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, as well as civil penalties, reasonable attorneys' fees, costs of suit, and any other relief authorized by WCPA that the Court deems proper.

### COUNT 9
### Violations of the Wisconsin Deceptive Trade Practices Act,
### Wis. Stat. § 100.18
### (On behalf of Plaintiff Thomas and the Wisconsin Class)

346.     Plaintiff Thomas hereby adopts and incorporates by reference the allegations contained in paragraphs 1-179 as though fully set forth herein.

347.     This claim is brought on behalf of Plaintiff Thomas individually and on behalf of the Wisconsin Class.

348.     Defendant is a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

349.     Plaintiff Thomas and Wisconsin Class Members are members of "the public," as defined by Wis. Stat. § 100.18(1).

350.     With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendant to members of the public for sale, use, or distribution, Defendant made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of fact which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

351.    Defendant also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

352.    Defendant's deceptive acts, practices, plans, and schemes include:

a.    Misrepresenting the true nature and/or benefits of the Miracle Repair Products;

b.    Omitting, suppressing, and concealing the material fact that the Miracle Repair Products are unable to repair damaged and/or broken hair;

c.    Naming and labeling the Miracle Repair Products "repair," despite its knowledge that the Miracle Repair Products did not and could not repair hair.

353.    Defendant intended to mislead Plaintiff Thomas and Wisconsin Class Members and induce them to rely on its misrepresentations and omissions.

354.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the Miracle Repair Products' abilities and/or benefits.

355.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Thomas and Wisconsin Class Members, that the Miracle Repair Products were capable of repairing broken and/or damaged hair.

356.    Defendant had a duty to disclose the above-described facts due to the circumstances of this case.

357.    Defendant's failure to disclose the above-described facts is the same as actively representing that those facts do not exist.

358.    Defendant acted intentionally, knowingly, and maliciously to violate the Wisconsin Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Thomas and Wisconsin Class Members' rights.

CLASS ACTION COMPLAINT

359.    On May 23, 2022, Plaintiff Thomas sent a detailed notice and demand for corrective action on behalf of herself and all others similarly situated. The notice and demand specifically notified Defendant of Plaintiff Thomas's claims for violations of the Wisconsin Deceptive Trade Practices Act; however, Defendant failed to respond.

360.    As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff Thomas and Wisconsin Class Members have suffered and will continue to suffer injury, including ascertainable losses of money or property.

361.    Defendant had an ongoing duty to consumers to refrain from deceptive acts, practices, plans, and schemes under Wis. Stat. § 100.18.

362.    Plaintiff Thomas and Wisconsin Class Members seek all monetary and non-monetary relief allowed by law, including damages, reasonable attorneys' fees, and costs under Wis. Stat. § 100.18(11)(b)(2), injunctive relief, and punitive damages.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.    Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Name Plaintiffs as Class Representatives of the respective Classes;

C.    Name Plaintiffs' counsel as Class Counsel for the Classes;

D.    Enter a declaration that Defendant is financially responsible for notifying members of the Classes of the pendency of this suit;

E.    Award damages, including compensatory and statutory damages, other monetary damages, and/or disgorgement and establishment of a constructive trust pursuant to the applicable statutes, to Plaintiffs and the Classes in amounts to be determined at trial;

F.    Award exemplary damages, including treble damages in accordance with proof and in an amount consistent with applicable precedent;

G.     Permanently enjoin Defendant from engaging in the unlawful and deceptive conduct alleged herein;

H.     Enter a declaration that the Miracle Repair Products cannot repair damaged hair;

I.     Award Plaintiffs and the Classes their expenses and costs of suit, including reasonable attorneys' fees pursuant to the applicable statutes;

J.     Award Plaintiffs and the Classes pre-judgment and post-judgment interest at the maximum rate allowable by law; and

K.     Award such further relief as the Court deems appropriate.

## IX. JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: March 31, 2023

Respectfully submitted,

*/s/ Rachel Soffin*
Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
*rsoffin@milberg.com*

Melissa S. Weiner (admitted *pro hac vice*)
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
T: (612) 389-0600
mweiner@pwfirm.com

Harper T. Segui (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
T: 919-600-5000
hsegui@milberg.com

Erin Ruben (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
eruben@milberg.com

*Attorneys for Plaintiffs & Proposed Classes*